# WESTERN MARYLAND RAILROAD CO. *vs.* STATE
## USE OF SUSAN B. SHIRK.

*Negligence—Breaking of Axle of Railway Car—Injury Caused by Jumping From Derailed Train—Proximate Cause—Duty of Railway Company to Inspect Cars of Other Roads Moved by it—Drover on Cattle Train a Passenger—Proof and Presumption of Negligence—Instructions to the Jury.*

The deceased was a drover accompanying his cattle on a freight train on defendant's railroad. One of the cars of the train was a gondola car which had been received by the defendant from a connecting road. The axle of this car broke while the train was in motion, causing some of the cars to be derailed, including the caboose at the end of the train in which deceased was then lying asleep. Some one in the caboose awoke the deceased and called to him to jump. Deceased leaped from the end of the car and fell upon his head, suffering an injury which resulted in his death. In an action by his widow to recover damages, *held*, that the breaking of the axle, while not the immediate, was yet the efficient cause of the injury, and if the breaking was due to the negligence of the defendant company in not properly inspecting the gondola car before sending it out in the train, and the deceased jumped from the train because directed so to do by an employee of defendant, then the plaintiff is entitled to recover.

In this case the jury was properly instructed that if the negligence of the defendant placed the deceased in a state of peril and he had at that time reasonable ground for supposing he would be injured by remaining on the train, then the plaintiff is entitled to recover although it may be found as a matter of fact that the leaping from the train by the deceased increased the peril or caused his death and that he would probably have sustained little or no injury if he had remained in the car.

A drover travelling on a pass on a freight train with his cattle is a passenger, but the carrier is not held to the exercise of the same extraordinary degree of care as to his safety which it must observe towards travellers on the regular passenger trains.

It is the duty of a railway company to ascertain by inspection whether the freight cars of another road, delivered to it for movement over its line, are safe and free from defects. The extent of the inspection requisite depends upon the circumstances of the case, and the company is bound to exercise ordinary and reasonable care in making it.

When a passenger is injured in consequence of the breaking of an axle on a car being moved on defendant's road, there is a presumption of neg-

ligence on the part of the defendant, and the burden of proving that due care was exercised in the inspection of the car is upon the defendants.

But in such case it is error to instruct the jury that in order to rebut the presumption of negligence the defendant must show that it exercised the utmost care and diligence in the management of the train and in all the subsidiary arrangements necessary to the safety of the passenger, since the sole cause of the injury sued for was the breaking of the axle and not a defect in any subsidiary arrangement.

When the evidence in the case leaves no room for doubt as to the acts and conduct of a passenger at the time of receiving an injury, it is not proper to instruct the jury that they may infer the absence of fault on his part from the general disposition of men to keep out of the way of danger.

When the declaration alleges only negligence in regard to the inspection of a car, the broken axle of which was the efficient cause of the injury sued for, it is error to enlarge the issue thus made by requiring the jury to find, in order to exonerate the defendant, not only that it made a careful and competent inspection of the car, but also that it exercised due care in all subsidiary arrangements necessary to the safety of the passenger.

A passenger on defendant's freight train made up in part of cars belonging to other roads, assumes the risk of all dangers arising from defects in foreign freight cars which could not be detected by the defendant by careful inspection thereof made with due regard to the exigencies of the traffic.

A prayer asking the Court to rule "as matter of law that upon the pleadings and evidence in the case the plaintiff is not entitled to recover," is too general.

Appeal from the Superior Court of Baltimore City (SHARP, J.), where there was a judgment for plaintiff for $2,500. At the close of plaintiff's evidence the defendant offered the following prayer : "The defendant prays the Court to rule, as a matter of law, that upon the pleadings and evidence in this case, the plaintiffs are not entitled to recover." But the Court refused to grant said prayer.

*Plaintiff's 1st Prayer.* That if the Court shall find as a matter of fact that the defendant was in the month of August, 1894, a corporation leasing and operating a railroad at Cherry Run, in the State of West Virginia, and Potomac Valley Junction, in Washington County, in the State of Maryland, known as the Potomac Valley Railroad, and that one Jacob E. Shirk,

now deceased, and one Jacob C. Landis, were on the 21st day of August, 1894, co-partners trading as Shirk & Landis, and engaged in the business of buying and selling cattle, and that on the said 21st of August, 1894, certain cattle belonging to said Shirk & Landis were shipped by the said Shirk & Landis over the said railroad so operated by the defendant company, and that the deceased Shirk was a passenger traveling in the caboose of the freight train in which said cattle were being transported and that the transportation of the said Shirk was furnished by the said railroad, under the bills of lading offered in evidence, as part of the consideration for the freight paid for hauling the said cattle, and that on the said 21st day of August, 1894, and while at or near Charlton Station, in Washington County, in the State of Maryland, by reason of the insufficiency of an axle of a car attached to the train upon which said Shirk was traveling, the said Shirk was so injured that he died from the effects of said injuries on September 1st, 1894, and that the defendant did not use due care in reference to said axle, but the said Shirk did use due care, and that the said Shirk was the husband of the equitable plaintiff, Susan B. Shirk, and the son of the equitable plaintiff, Obed H. Shirk, and that the life of the said Shirk was of pecuniary benefit to the said equitable plaintiffs, respectively, that then the plaintiffs are entitled to recover in this action.   (*Granted.*)

*Plaintiff's 2nd Prayer.*   If the Court finds as matter of fact the facts stated in the plaintiff's first prayer, and that the defendant received and accepted the deceased Shirk as a passenger to be carried as therein stated, then defendant was bound to exercise on said trip for deceased's safety, the highest degree of care and skill which was consistent with the nature of its undertaking.   (*Granted.*)

*Plaintiff's 3rd Prayer.*   If the Court sitting as a jury believes from the evidence that the deceased Shirk was killed whilst a passenger on a train on a leased road operated by the defendant, the fact of such injury is *prima facie* evidence of negligence on the part of the defendant, throwing upon it the

burden of rebutting the presumption by showing there was no negligence on its part, or that the accident could have been avoided by the exercise of ordinary care on the part of the deceased. (*Granted.*)

 · *Plaintiff's 4th Prayer.* That in order to rebut the presumption of negligence on its part the defendant must show that the death of Jacob E. Shirk while traveling as a passenger on its train, (if the Court sitting as a jury shall find such death) could not have been prevented by the utmost care and diligence in the running and management of the train and the sufficiency of an axle on a car of said train, and in all the subsiduary arrangements necessary to the safety of the deceased. (*Granted.*)

*Plaintiff's 5th Prayer.* That in considering the question of negligence it is competent for the Court sitting as a jury, in connection with the other facts and circumstances of the case, to infer the absence of fault on the part of the deceased from the general and known disposition of men to take care of themselves and to keep out of the way of difficulty and danger. (*Granted.*)

 · *Plaintiff's 6th Prayer.* If the Court shall find as matter of fact that the negligence of the defendant placed the deceased Shirk in a state of peril, and he had at that time a reasonable ground for supposing he would be injured by remaining on the train, then the plaintiffs are entitled to recover, although the Court may find as matter of fact that the jumping of the deceased Shirk increased the peril or caused his death, and although it may find that he would probably have sustained little or no injury if he remained on the car. (*Granted.*)

*Plaintiff's 7th Prayer.* That in hauling the cars of the Baltimore and Ohio R. R., over a railroad leased and operated by the defendant, the defendant assumes all liability for defects and insufficiency of such cars in the same manner as if they had been the cars of the defendant. (*Refused.*)

 · *Defendant's 2nd Prayer.*—The defendant prays the Court to rule as a matter of law that it is the duty of the defendant to receive and forward loaded freight cars, belonging to other common carriers, offered to it for transportation over its road,

with diligence and dispatch and that the defendant has a right
to assume that such foreign cars were carefully and properly
constructed, and is not liable for accidents resulting from
any defects in such foreign cars, while being forwarded over
its road, provided that the defendant maintains a sufficient
number of competent and skilful inspectors, and subjects such
cars to such careful inspection as the exigencies of traffic will
permit before permitting such cars to be forwarded over its
road, and provided further that no defects or dangers are re-
vealed or disclosed by said inspection, and the defendant exer-
cises all due care and caution *in the running and* management
and operation of (such cars) *the train and in all the subsidiary
arrangement necessary to the safety of the passenger* while being
transported over its road.   (Granted as modified by the addi-
tion of the words in italics.)

*Defendant's 3rd Prayer.*—That if the Court as jury shall
find that the accident complained of in this case was caused
solely by a defect in the axle of a loaded freight car belonging
to the Baltimore and Ohio Railroad Company and that said
loaded car was received by the defendant from the Baltimore
and Ohio Railroad Company at Cherry Run, West Virginia,
for transportation over its line, and that the defendant main-
tained and employed at Cherry Run a force of competent and
skilful inspectors, and that after said loaded car was received
by the defendant, it was examined and inspected by its said
agents in as careful and thorough a manner as the necessary
exigencies of the traffic at said point permitted, and that no
defects were found in said car, and that the defendant forwarded
said car on its lines, and that the defendant, its servants
and agents used due care in the (operation), *running and
management* of the train of which said car was a part, *and in
all the subsidiary arrangements necessary to the safety of the
passenger*, then the defendant was not guilty of negligence,
and the verdict must be for the defendant, even though the
Court as jury shall find that the axle of said car broke and
caused the accident complained of.   (Granted as modified by
the addition of the words in italics.)

*Defendant's 4th Prayer.* That if the Court as jury shall find the facts set out in the defendant's third prayer and shall further find that the defendant, its servants and agents subjected said car to the ordinary and usual tests employed by railroads generally to ascertain the fitness and safety of the loaded freight cars of other roads received for transportation over their lines, and that such tests disclosed no defects in said car, then the defendant was not guilty of negligence, and the verdict must be for the defendant, even though the Court as jury shall find that the axle of said car broke by reason of some defect and caused the accident complained of. (*Rejected.*)

*Defendant's 5th Prayer.* That if the Court as jury shall find that the said Jacob E. Shirk became a passenger on a freight train of the defendant company and that said freight train was made up partly of loaded freight cars belonging to other companies and received by said defendant to be forwarded over its line then the said Shirk assumed the risk of all dangers arising from defects in such foreign cars which could not be detected by the defendant by careful inspection of said cars, made with due regard to the exigencies of traffic, provided the defendant used all due care (in the operation of said train) *in the running and management of said train and in all the subsidiary arrangements necessary to the safety of a passenger.* (Granted as amended by the addition of the words in italics.)

*Defendant's 6th Prayer.*—That if the Court as jury shall find the facts set out in the defendant's fifth prayer and shall further find that the said Shirk received injuries resulting in his death by the breaking of an axle on a loaded freight car of said train belonging to another road and being transported over the line of the defendant's road and shall further find that said foreign car was inspected by competent and skilful agents of the defendant before being transported on the line of the defendant's road, in as careful a manner as the exigencies of travel permitted, and that no defect in said car was discovered or disclosed by said inspection, then the accident was one of the risks incident to such mode of travel and the verdict must be for the defendant, unless the Court as jury, shall further

find that said accident was caused by the negligence of the defendant in the (operation), *running or management* of the train of which said car formed a part, *or in some of the subsidiary arrangements necessary to the safety of the passenger.* (*Granted as amended.*)

*Defendant's 7th Prayer.*—That there is no evidence in this case that the said Shirk, the equitable plaintiff's decedent, was induced to jump from said car by the act or conduct of any of the employees, servants or agents of the defendant company, counselling or directing him so to jump.   (*Refused*).

*Defendant's 8th Prayer.*—That if the Court as jury shall find that the injuries complained of were caused solely by the act of the said Shirk in jumping from said car, and that said Shirk was induced to so jump by fear or apprehension of danger, and that such fear or apprehension was solely due to the act or conduct of some person or persons in said car counselling or directing him to jump from said car, and that said fear or apprehension was not in fact justified or warranted by the circumstances, then the accident complained of was due to the negligence of the said Shirk, and the defendant was not guilty of any negligence contributing to said accident, and the verdict must be for the defendant, unless the Court as jury shall further find that the person or persons so arousing said fear or apprehension by counselling and directing him to jump were servants or agents of said defendant.   (*Granted.*)

*Defendant's 9th Prayer.*—That if the Court as jury shall find that the injuries complained of were caused by the act of the said Shirk in jumping from said car, and that said Shirk was induced to so jump from fear or apprehension of danger, and that said fear or apprehension was aroused by the act or conduct of some person or persons in said car, counselling or directing him to jump from said car, if the Court as jury shall so find, and shall further find from the evidence that such real and imminent danger existed as would justify an ordinarily prudent and cautious person in jumping from said car, and in counselling and directing others to so jump, and shall further find that such danger arose from the breaking of an axle under

a loaded freight car, one of the cars of the said train, and that said loaded freight car belonged to the Baltimore and Ohio Railroad Company and was received by the defendant from the Baltimore and Ohio Railroad Company, at Cherry Run, West Virginia, to be forwarded over its lines, and that the defendant maintained and employed at Cherry Run a force of competent and skilful inspectors, and that after said loaded freight car was received by the defendant, it was examined and inspected by its said agents, in as careful and thorough a manner as the necessary exigencies of the traffic at said point permitted, and that no defect was found in said car, and that the defendant forwarded said car on its line, and that the defendant, its servants and agents, under due care *in the* (operation), *running and management of the train, of which said car was a part and in all the subsidiary arrangements necessary to the safety of the passengers,* then the defendant was not guilty of negligence and the verdict must be for the defendant, even though the Court as jury shall further find that the person or persons so counselling or directing the said Shirk to jump were servants or employees of the defendant. (*Granted as amended.*)

*Defendant's 10th Prayer.*—That under the pleadings and evidence in this case there is no evidence legally sufficient to show that the equitable plaintiff in this case Obed H. Shirk, suffered any pecuniary damage by the death of Jacob E. Shirk, and therefore the Court's verdict must be for the defendant in so far as the defendant is alleged to be liable to the said Obed H. Shirk. (*Granted.*)

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*R. E. Lee Marshall* and *J. Hanson Thomas,* for the appellant.

*John Hinkley* (with whom was *W. U. Hensel* on the brief), for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

This suit was brought in the name of the State of Maryland for the use of the widow and the father of Jacob E. Shirk, deceased, against the Western Maryland Railroad Company to recover damages for the injuries sustained by the equitable plaintiffs as a consequence of the death of Shirk. The death of Shirk is alleged to have been caused by the negligence of the railroad company. The questions that are open for consideration are all brought up by an exception to the Court's rulings on the prayers presented at the close of the case. The prayer offered at the conclusion of the plaintiff's case was too general, *Robey* v. *State, use of Mallory*, 94 Md. 67, and was, therefore, properly rejected. But even if there had been error in refusing to grant that prayer, the right to have the ruling reviewed was waived by the defendant when it proceeded thereafter to introduce evidence on its own behalf. *Barabasz* v. *Kabat*, 91 Md. 53.

The facts which must be stated so that the legal principles involved may be understood are as follows: In the latter part of August, eighteen hundred and ninety-four, Jacob E. Shirk and his co-partner, Jacob C. Landis, shipped, under a through bill of lading, from Somerset County, Pennsylvania, to Ephrata in Lancaster County, two car loads of cattle by way of the Baltimore and Ohio, the Western Maryland, the Cumberland Valley and the Philadelphia and Reading railroads. The cars were delivered by the Baltimore and Ohio railroad to the Western Maryland railroad at Cherry Run on August the twenty-first and subsequently, on the same day, with other freight cars were made up into a train to be hauled to Hagerstown for transfer to the Cumberland Valley railroad. Both Shirk and Landis were entitled to ride free on the freight train which carried the cattle. The train consisted of nine loaded cars and two empty ones and a caboose, the latter being at the end of the train. Next behind the two cattle cars was a Baltimore and Ohio gondola car loaded with steel billets, and following that were two or three other cars and then came the caboose. The train left Cherry Run in the afternoon. Shirk

and Landis were in the caboose and both were asleep. · When
the train had reached a point about ten miles from Hagers-
town and whilst running at a speed of twelve miles an hour the
front axle of the Baltimore and Ohio gondola car broke about
nine inches from the wheel, the axle fell upon the ties derailing
some of the cars behind it including the caboose. Besides
Shirk and Landis there were two other men in the caboose.
When the caboose left the rails some one awoke Shirk and
Landis and called to them to jump. Whether the person
who gave the warning was one of the crew of the train or not
is a disputed matter. Shirk ran out of the rear door of the
caboose and leaped from the end of the platform with his
back to the train whilst the train was still in motion, and fell
upon his head receiving a severe injury which caused his
death on September the first. Landis jumped from the side
of the platform and fell on his side. He was not badly hurt
but claims that since then he has been suffering from sciatic
rheumatism resulting from the fall. Before the train left
Cherry Run the cars were inspected by the car inspectors of
the defendant, but it is asserted that the inspection was insuf-
ficient. This is one of the controverted questions of fact, and
it is a question to be determined by the jury, or by the Judge
sitting as a jury, under appropriate instructions. *Palmer* v.
*Delaware, &c., Canal Co.* 120 N. Y. 170.

The declaration alleges that Shirk was injured and killed
"by reason of the insufficiency of an axle of a car attached
to" the freight train upon which he was riding.

The undisputed evidence shows that the injury which caused
the death was inflicted, not by the broken axle but by Shirk's
falling on his head when he jumped from the moving train.
It is clear that the broken axle caused the derailment of the
caboose, and that the derailment induced one of the occu-
pants of that car to awaken Shirk and to suggest to him to
jump in order to save himself from injury. It is altogether
probable that had he not jumped he would not have been
hurt; and it is certain that he would not have jumped if the
axle had not broken. If the breaking of the axle was due to

the negligence of the defendant company in not properly in-
specting the gondola car before sending it out in the train,
and was not the result of a hidden and undiscoverable defect ;
and if the deceased jumped, in the circumstances stated, be-
cause directed by an employee of the company to do so, then
the equitable plaintiff—the widow—would be entitled to re-
cover because whilst the breaking of the axle was not the
immediate cause of the death it was the efficient cause, or the
cause but for which the death would not have happened.
It was for the jury, or the Judge sitting as a jury, to say in
view of all the evidence whether negligence had been satisfac-
torily shown and whether the deceased had exercised proper
care in jumping from the moving train.    The prudence of a
passenger's leaving a moving train to escape an apparent dan-
ger must be judged by the circumstances as they appeared to
him at the time and not by the result.   *St. L. & S. F. R. Co.
v. Murray,* 55 Ark. 248, 16 L. R. A. 787.   The Court could
not rule as matter of law that there was no evidencs of negli-
gence.   The deceased was a passenger.   5 *Am. & Eng. Ency.
L.* (2d ed.) 508, and note 5.   He was not, however, entitled
to the same absolute and extraordinary degree of care as to
his safety which a common carrier is bound to exercise
towards a traveller on a regular passenger train.   "Where a
drover is riding on a pass on a freight train the carrier is not
bound to the same absolute or extraordinary degree of care
as to his safety as it is to a passenger for hire riding pursuant
to a ticket on regular passenger trains, for it is impossible for
the company to care as well for a person riding on an ordi-
nary freight train as it is for one riding on a regular passen-
ger train."   4 *Elliott on Railroads,* sec. 1606.   This proposi-
tion is self evident.   The risks and dangers are much greater
and more numerous upon a freight than upon a passenger
train, and the same precautions in the way of running the
former and in constructing the cars used therein that are neces-
sary in respect to the latter cannot, in the very nature of things,
be observed.   This is a condition which every one who rides
upon a freight train must be held to appreciate and under-

stand.  *Chic. & Alton R. Co.* v. *Arnold,* 144 Ill. 270–272.  In sec. 1629, 4 *Elliott on Railroads,* the author after speaking of the degree of care which a carrier owes its passenger proceeds : "But we do not mean that its duties and the precautions it must take are absolutely the same with respect to the operation of (freight) trains as with respect to regular passenger trains.   As to its road-bed, bridges and the like, it would seem that the duty is absolutely the same, but it is obvious that the risk is greater in riding upon freight trains, that the same appliances cannot be used and that the same speed and comparative freedom from sudden jerks and the like cannot be attained. · The duty of the company is therefore modified by the necessary difference between freight and passenger trains and the manner in which they must be operated, and while the general rule that the highest practicable degree of care must be exercised holds good, the nature of the train and the necessary difference in its mode of operation must be considered, and the company is bound to exercise only the highest degree of care that is usually and practically exercised and consistent with the operation of trains of that nature."   "In the operation of freight trains, the primary object is the carriage of freight, and the appliances used are, and are known by the passengers to be adapted to that business, and the carrier is not, when transporting passengers thereon, held to a degree of care in its operation that would destroy the use of the train for its primary purpose."   *Ch. & Alt. R. Co.* v. *Arnold, supra.*

- Shirk having been a passenger, but a passenger on a freight train, the usual presumption of negligence obtaining when a passenger is injured by some defect in the road-bed, or in the means or instrumentalities of transportation, would apply in a modified way, and the modification would be due to the difference in the make-up of a freight train and to the difference in the method and circumstances of its operation.   The presumption of negligence, above alluded to, is a rebuttable presumption and unless the plaintiff's evidence itself destroys the presumption or furnishes no basis for it to rest on, it must be

overcome by the defendant, and the credibility of the testimony adduced by the latter is for the jury, or the Judge sitting without a jury to determine.

As it is the duty of the carrier to use safe appliances, so it is a further duty to ascertain whether foreign freight cars delivered to it for movement over its line are safe and free from defects before suffering them to go over its road. This duty can only be discharged by properly inspecting such cars. The extent and thoroughness of the inspection must, of necessity, depend upon circumstances. The same minuteness is not possible in every instance. It must be as thorough as possible regard being had to the nature of the business and the hazards involved. It need not be scientific, it must be practical. The question is not whether, according to evidence of a scientific or speculative nature, a defect might have been detected, but whether practically and by the use of ordinary and reasonable care it ought to have been observed. *Stokes* v. *Eastern Counties R. Co.*, 2 F. & F. 691. The rigid rule laid down in *Shop* v. *Grey*, 9 Bing: 457, to the effect that the carrier is bound to furnish a road-worthy conveyance and if the event proves that it was not so the carrier must suffer the consequences, though as diligent in making an inspection of the coach as was possible without taking it apart was distinctly repudiated in England. *Readhead* v. *Midland R. Co.*, L. R. 4 Q. B. 379. This same rule though at first followed in New York, *Alden* v. *N. Y. C. R. Co.*, 26 N. Y. 102, was subsequently rejected in *McFadden* v. *N. Y. C. R. Co.*, 44 N. Y. 478. It is now well settled that a carrier of persons is not liable for latent defects in its appliances which could not be discovered either in the process of manufacture or subsequently by the application of that skill and care which is required of such carriers. 5 *Am. & Eng. Ency. of Law*, 528, and cases in note 4. Thus in *Richardson* v. *Great Eastern R. R. Co.*, L. R., 1 C. P. D. 342, it appeared that the plaintiff, who was a passenger on a passenger train of the defendant was injured in a collision between the train upon which he was riding and another train and that the collision was caused by

the breaking of an axle under a foreign freight car attached to the train which collided with the passenger train. The foreign freight car had been inspected and the tests usually employed by railroads were applied before it was sent out and the defect was not revealed. In the course of the judgment delivered on appeal it was said by JESSELL, M. R. : "The Railroad Company is bound to take reasonable care to ascertain that trucks belonging to other companies and persons so coming on their line, are in such a state to travel safely. They must therefore use due diligence in the examination of such trucks. * * * The company cannot stop all foreign trucks and empty them for the purpose of a minute examination. * * * It cannot be said that it is obligatory upon the company so to treat foreign trucks as to destroy the very objects for which they were sent on the line, viz : For the purpose of through traffic. There must be some reasonable limit to the amount of examination required." The evidence in this record furnishes an illustration of the wisdom of the above observations. It was shown that during the month of August, eighteen hundred and ninety-four—the month that Shirk was injured—the defendant company received from and delivered to the Baltimore and Ohio Railroad Company at Cherry Run, five thousand, nine hundred and thirty-three freight cars, or an average of one hundred and ninety-one each twenty-four hours. The inspection of one hundred and ninety-one cars in twenty-four hours would require that eight be inspected each hour and that would allow something less than eight minutes for a car. If through cars were delayed for a more minute inspection the very purpose had in view in forwarding them would, in a great measure, be frustrated, and rapid through shipments would have to be abandoned. If the measure of the carrier's duty with respect to foreign freight cars be the one cited above from 5 *Am. & Eng. Ency. of Law*, and illustrated by the case of *Richardson* v. *Great Eastern R. R. Co.*, *supra*—and there is no doubt that it is—then one who travels on a freight train made up in whole or in part of foreign cars cannot reasonably insist

that a higher degree of care must be exercised in regard to the inspection of such cars than would be requisite if he were not a passenger thereon. In other words, he cannot claim that because he is a passenger on a freight train more care must be taken in inspecting the cars than would be necessary if he were not a passenger.

. With these preliminary principles settled we may now turn to the instructions given and the prayers refused by the trial Court.

From what has been said it is obvious that the Court was right in refusing to grant the appellant's first prayer offered at the conclusion of the case, inasmuch as by that prayer the case was sought to be withdrawn from the consideration of the Court sitting as a jury on the ground that there was no legally sufficient evidence to prove negligence on the part of the railroad company. There was the presumption arising from the breaking of the axle. The standard of care required in regard to its inspection being as above declared and the burden of proving that care being on the defendant, it was for the Court sitting as a jury to say whether the railroad company's evidence measured up to that standard; and consequently the Court could not grant the prayer and thus deny to the Judge sitting as a jury, the right to pass on the credibility of that evidence.

The *first* instruction given at the instance of the appellee as qualified by the appellant's tenth instruction fairly put the theory of the plaintiff and there was no error in granting it.

The appellee's *second* instruction should not have been granted. It required the railroad company to exercise " the highest degree of care and skill which was consistent with the nature of its undertaking " in transporting Shirk as a passenger. The degree of care thus described is the degree of care imposed upon a carrier of persons on a passenger train and not the degree of care required of it in transporting a passenger on a freight train. The instruction should have been more definite. It is possible upon very close reasoning to say that by reference to the first instruction the attention of the Court

sitting as a jury was called to the fact that Shirk was a passenger on a freight train and that the qualification limiting the care and skill to that which was consistent with the nature of the undertaking restricted the railroad's obligation to that measure of care and skill which it was bound to exercise towards a passenger on a freight train, because the undertaking was to carry him on a freight train.   But there is no suggestion in either the first or the second instruction that any different measure of care and skill is applicable to the two conditions, and thus a jury would have been left free to adopt in this case the more rigid rule respecting a passenger on a passenger train.   The instructions did not say that there was a difference in the degree of care and skill in the two instances, nor did they define or point out wherein the difference consisted.   The instruction was, therefore, misleading.

In the *third* instruction it was ruled that the fact that Shirk was killed whilst a passenger was *prima facie* evidence of negligence on the part of the defendant which threw upon it the burden of rebutting the presumption by showing that there had been no negligence on its part.   This was erroneous.   The mere fact that he was killed whilst a passenger without any reference as to *how* he was killed, furnished no ground for a presumption of negligence.   The fact that he was a passenger and the fact that he was killed whilst a passenger justified no inference of any kind as to what caused his death, and therefore, did not warrant the conclusion that his death had been due to the defendant's negligence.   This is illustrated in *Penna. R. R. Co.* v. *MacKinney*, 124 Pa. St. 462, where it is said : " A passenger's leg is broken while on his passage in a railroad car.   This mere fact is no evidence of negligence on the part of the carrier until something further be shown.   If the witness who swears to the injury testifies also that it was caused by a crash in a collision with another train of cars belonging to the same carrier, the presumption of negligence immediately arises ; not, however, from the fact that the leg was broken, but from the circumstances attending the fact.   *Benedict* v. *Potts*, 88 Md. 56, 57.

The *fourth* instruction granted at the instance of the appellee was also erroneous.   Whilst it is true that a presumption of negligence may arise from the circumstances of a case and that it is incumbent on the defendant to rebut that presumption when it does arise, it is not true that the defendant must show, in order to rebut the presumption in a case like this, " the utmost care and diligence in the running and management of the train   *   *   *   *   *   and in all the subsidiary arrangements necessary to the safety of the deceased," especially as the declaration alleges the insufficiency of the car axle as the sole ground of negligence.   When the cause of the injury is charged in the *narr.* to be the insufficiency of an axle it is error to require the carrier to show, not only due and proper care with respect to that axle, but in addition the sufficiency of all the subsidiary arrangements necessary to the safety of the deceased, though it is not pretended that any of those subsidiary arrangements (whatever they were) had anything at all to do with the injury.   Under this instruction the defendant company would have been liable though there had been *no* negligence in respect to the axle—the thing which *did* cause the injury—if there *had* been negligence in regard to some subsidiary appliance which did *not* cause the injury ; because the thing which *did* and the things which did *not* cause the death of Shirk are conjunctively put in the instruction, and the company was required in order to rebut the asserted presumption of negligence to show the utmost care and diligence with respect to *all* of them.

The *fifth* instruction was misleading.   It was not applicable to the facts of this case.   It has been held proper in some cases.   *B. & O. R. R Co.* v. *State, use of Hauer,* 60 Md. 449.   But it is not universally applicable.   The absence of fault on the part of the deceased can only be inferred from the general and known disposition of men to take care of themselves and to keep out of the way of difficulty and danger, when there is no reliable proof to negative the inference or when there is rational doubt upon the evidence as to the acts and conduct of the parties.   *P. W. & B. R. R. Co.* v. *Steb-*

*bing*, 62 Md. 518. There is no room for a rational doubt upon the evidence, as to the acts or the conduct of the deceased. There was no basis for the presumption in this case and it was misleading to inject it.

The *sixth* instruction is free from error, and the *seventh* prayer was refused.

The *eighth* and *ninth* instructions relate to the measure of damages. Taken in connection with the appellant's *tenth* they are unobjectionable.

There was injurious error in modifying the appellant's *second*, *third*, *fifth*, *sixth* and *ninth* prayers. The modification which was added by the trial Court to each of these prayers required the railroad company to show that it had used due care "in all the subsidiary arrangements necessary to the safety of the passenger whilst being transported over the road," notwithstanding the fact that it was not contended or even suggested by the plaintiff that the absence of due care in any of the subsidiary arrangemants was the cause of the injury. The declaration, as has been pointed out, counted on negligence in respect to the car axle and in respect to nothing else, and the issue thus made should not have been amplified or enlarged by the modification annexed to those prayers. "*City Pass. Ry. Co.* v. *Nugent*, 86 Md. 360. The *second*, *third*, *sixth* and *ninth* prayers as presented before being modified by the trial Court, were designed to define the degree of care imposed by the law upon the railroad company as to the inspection of freight cars of other roads delivered to it for movement over its own road, and in the light of what we have said on this subject they ought to have been granted without modification.

The *fifth* prayer as presented definitely ruled that the deceased assumed the risks of all dangers arising from defects in foreign freight cars when the defects could not be detected or discovered by careful inspection. As such an inspection is the measure of duty which the company was bound to perform with respect to such cars, it owed no higher duty to the deceased who was a passenger on the freight train ; and when

that duty was done, if done, the hazards incident to hidden or latent imperfections were, of course, assumed by the passenger on such a train.

The appellant's *fourth* prayer stated the same principle in a slightly different form and for the reasons already given should have been granted.

The *seventh* prayer was properly refused. There was some evidence from which the Judge sitting as a jury might have found that Shirk was induced to jump from the caboose by the act or advice of an employee of the railroad.

The appellant's *eighth* and *tenth* prayers were granted.

Because of the errors indicated the judgment in favor of the plaintiff must be reversed and a new trial will be awarded.

> *Judgment reversed with costs above and below and new trial awarded.*

(Decided November 21st, 1902.)