# FLEISCHMAN TRANSPORTATION COMPANY
## ET AL. *v.* HULDREICH EGLI.
### [No. 102, October Term, 1932.]

*Decided February 2nd, 1933.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*William D. Macmillan,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellant.

*Philip B. Perlman,* with whom were *Wirt A. Duvall, Jr.,* and *August A. Denhard,* on the brief, for the appellee.

Urner, J., delivered the opinion of the Court.

In a collision between the automobile he was driving and the defendants' motor truck, the plaintiff was seriously injured. In the trial of his suit against the owners of the truck, on the ground of negligence on the part of their employee in its operation, certain exceptions were taken by the defendants which raised the questions to be determined on their appeal from a judgment for the plaintiff on the verdict of a jury.

The accident occurred near Elk Ridge on the state highway known as the Washington Boulevard. As the plaintiff's car was rounding a curve, on his way from Baltimore to Washington, it collided with the truck of the defendants,

coming from the opposite direction. The testimony on behalf of the plaintiff was to the effect that his car was proceeding on his right of the white line marking the center of the roadway, around the curve, and that the truck, as it approached, on a downgrade, at a high rate of speed, veered suddenly into the path of the car and struck it on the left side as it was being turned to the right in an effort to avoid the impact. It was testified, on the contrary, by the driver of the truck and other witnesses, that the plaintiff's car was to his left of the roadway center line, and the truck was on its proper side of the highway, when the collision became imminent, and that both vehicles were turned across the road in unsuccessful efforts to avert the accident.

There is no contention that there was an insufficiency of evidence legally tending to prove primary negligence, nor that contributory negligence on the part of the plaintiff was conclusively proved.

The first exception was reserved because of the admission of evidence as to the earnings of the plaintiff, who was a mechanical engineer. It was argued that the nature of the plaintiff's business was such as to render his prior receipts too uncertain a gauge of the income he would have earned if the accident had not happened. The admitted evidence showed that his net professional income in 1929 was $6,206.12, in 1930, $9,893.88, and in 1931, $6,719.08, to the time of his being injured in the collision, which occurred in June of that year, and that his subsequent earnings to the time of the trial, in June, 1932, were less than his expenses. It was not until December following the accident that he was able to return to his office. His work had consisted in planning and supervising the installation of heating, ventilating, sanitary, and electrical systems, and his fees were a specified percentage of the construction costs.

In regard to the effects of his injuries upon himself and his business, the plaintiff testified that he "is in a nervous condition, has continuous pains in his chest, has frequent headaches, has occasional vomiting spells and had been spitting blood until recently"; that the condition of his in-

jured leg "is a handicap in his profession, which requires frequent walking in spaces and places where absolute stability is essential"; that he does not "dare attempt to go on the construction" as formerly, that since the accident he "has been unable to secure any work of any amount," such work as came to his office having been "practically assigned to him before"; that his business had steadily increased in volume and profit prior to the accident, but that now he can spend only two or three hours a day at his office, and some days he could not go there at all; and that he "isn't able to attack his problems; the business is now aggravating and makes him nervous and he is uncertain; he gets tired easily and doesn't seem to get anywhere."

According to the medical testimony as to the plaintiff's injuries, he had a severe scalp laceration, a ruptured diaphragm, fractures of the left knee, collar bone, and seventh and eighth ribs, and displacements of his stomach and heart; but those organs were restored to their proper positions in the course of an operation. Dr. Edwards thus described the effect of the injuries: "The bone in the left knee was pushed in a little on the outer side of the joint, causing some unusual lateral motion in the joint which interferes somewhat with weight bearing and walking. The clavicle fracture has limited a little the use of his left shoulder. * * * He has a big scar in his diaphragm, a thin muscle contracting and expanding with breathing, there must be some limitation of that though a very satisfactory result there was obtained. Some of these injuries are permanent. The scar in the diaphragm probably has the left lung stuck to it, and there is a slight limitation of the left lung because of that. Then because the surface of the knee joint was pushed in about one-eighth of an inch he has a lateral abnormal motion in the joint. The burning sensation across the stomach, of which plaintiff complains, could be due to the diaphragm scar having slightly punctured the esophagus where that goes through the diaphragm. This can't be told definitely. * * * Several X-Rays show some consolidation still of the lower part of the lungs. * * *"

The reference which has been made to the testimony as to the nature and effect of the plaintiff's injuries has been more full and detailed than the first exception requires, but the reason for such a summary will be apparent when we come to dispose of another exception. It is sufficient for the purposes of the question raised by the first exception to note that the evidence proves an impairment of earning capacity, with respect to which an inquiry as to resulting pecuniary loss was pertinent. The adopted method of proving such loss by comparison with the amounts earned during an immediately preceding period of years has been definitely sanctioned by this court. In the opinion delivered in *Md., D. & V. R. Co. v. Brown,* 109 Md. 304, 315, 71 A. 1005, 1010, it was said, favorably to a similar proffer of the plaintiff: "It was certainly proper for the jury to know how his injuries affected his earning capacity, and there could be no better evidence of this than a comparison of what he had testified were his earnings at the time of his injury, with those he was capable of earning and did receive afterwards. It was the privilege of defendant, upon cross-examination or otherwise, to show, if it could, that he did, or could with proper effort, have earned more than he testified, and we can perceive no error in these rulings." In our judgment the plaintiff in this case should not be deprived of the benefit of that principle merely because he was engaged in professional work and his income was derived from fees instead of wages or salary. There was adequate certainty in the evidence as to the facts and figures essential to the use of such a mode of proving the loss of earnings.

In view of the testimony already recited, we approve the action of the trial court in overruling the special exception based upon the theory that there was no evidence legally sufficient to justify the submission to the jury of the question as to "how far, if at all, the plaintiff's injuries are calculated to disable him in the future from engaging in those pursuits for which, in the absence of such injuries, he would have been qualified." It was also proper to refuse a proposed instruction that there was no evidence legally sufficient

to prove that the plaintiff's future earnings would probably be reduced as a result of his described injuries. The impairing effect of the permanent injuries to his diaphragm and knee joint, as mentioned by Dr. Edwards, upon the plaintiff's ability to pursue his vocation with his former efficiency and success, was sufficiently indicated in his testimony to prevent the withdrawal of that question from the jury.

The only remaining exceptions refer to the admission of testimony by a salesman at a garage near the scene of the accident, that trucks coming "down the hill" towards that point could not be heard from his position unless they were "in gear," which made their operation distinctly audible, and that he did not hear the defendants' truck until its impact with the plaintiff's car, although the witness was standing in front of the garage, and there were no other sounds to prevent him from hearing the truck's approach. An inquiry whether the truck was out of gear as it came down the hill was material as reflecting upon the issue as to control and speed, but this witness was said to be disqualified to testify on that subject because he could not see the hill down which the truck was approaching around the curve, and because he was 175 feet distant from the place of the collision and was then engaged in a conversation. Those circumstances would affect the weight of the testimony, but could not properly be regarded as destroying its admissibility. The witness said he had lived eighteen years in that neighborhood and had been at the garage "all day, nearly every day for nearly a year." He testified as a fact that trucks coming down the hill beyond the point of the accident could be heard from the place of his daily employment when they were in gear, but not when their movement was free of such control. There was opportunity for him to acquire such knowledge while performing his duties in close proximity to the much traveled highway. The testimony was not so inherently improbable as to require its exclusion on that ground. It did not include any attempted estimate of speed, and is therefore not within the principle of the ruling in *Dashiell v. Jacoby,* 142 Md. 330, 120 A. 751, to which the appellants refer.

In regard to the exceptions last discussed, there is a further question to be considered. Objection was not made until the witness had stated that, in front of the garage where he is employed, he could hear a truck coming down hill if it were in gear, but if out of gear it could not be heard from that point. Counsel having said that he should have objected earlier, the court stated the objection would be taken "as though made in the beginning." The bills of exception, as prepared by permission of the lower court, include a series of objections, motions to strike out, rulings and exceptions which would have been appropriate to the presentation and disposition of the defendants' request to have the testimony excluded, but which do not represent actual occurrences at the trial. This is not a proper practice. The exceptions in the record should have been limited to those which were in fact reserved at the trial, and should not have been subsequently amplified for the purposes of appeal. But the record sufficiently shows the objection and ruling which the appellants wish this court to consider, and upon which our opinion has been stated. The trial judge, in the reasonable exercise of his discretion, entertained the objection, though interposed after the admission of the testimony to which it related. In *Dashiell v. Jacoby, supra,* 142 Md. 330, 336, 120 A. 751, 53, it was said in the opinion by Chief Judge Boyd: "Of course, the trial court ordinarily has large discretion as to whether to strike out evidence already admitted, but that discretion is not without limit. Courts have the power to strike out testimony based on unreasonable and false assumptions of fact, if a motion is seasonably made when it is discovered what the witness has based his evidence on. * * * This court recently passed on the question whether a motion to strike out testimony should be considered, although the objection was not made immediately after it was offered. In *Mitchell v. Slye,* 137 Md. 89, 100, 111 A. 814, 817, Judge Offutt, in speaking for the court, said: 'The rule requiring objections to testimony to be made promptly is for the purpose of facilitating rather than retarding the administration of justice, and should receive a reasonable interpretation, and

even when the objection comes after a question has been answered, if it appears that the delay was inadvertent and unintentional, and what, under all the circumstances was reasonable diligence, was exercised, or that no sufficient opportunity had been given to make it sooner, the objection will be considered to have been taken in time.' See, also, 1 *Wigmore on Ev.,* sec. 18, p. 53; *Marsh v. Hand,* 35 Md. 123, 127; *North v. Mallory,* 94 Md. 305, 51 A. 89."

No ground of reversal is shown by the record.

*Judgment affirmed, with costs.*