ERICSSON LINE, INC., *v.* JOSEPH M. HAWKINS

[No. 42, January Term, 1938.]

*Decided April 8th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William L. Marbury, Jr.,* and *Jesse Slingluff, Jr.,* with whom were *L. Wethered Barroll* and *Marbury, Gosnell & Williams* on the brief, for the appellant.

*Lester L. Barrett,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

This appeal is taken from a judgment against the defendant, Ericsson Line, Inc., sued as tort-feasor by another's employee (Code, art. 101, sec. 58), who had been awarded compensation for an injury sustained at the defendant's pier in Baltimore. There were two exceptions in the record; the first on an objection taken to a question to Dr. Edwin D. Weinberg, asking whether the plaintiff's injury was permanent, which was renewed by a special exception (overruled) to so much of the plaintiff's first and only prayer as submitted this element of damage to the jury; the second exception to the rulings on the prayers.

The defendant asked an instructed verdict on two grounds; one for legally insufficient evidence of negligence, the other, contributory negligence, so that it is necessary to review the evidence.

Joseph M. Hawkins, plaintiff, who sues for himself, and for the use of the State Accident Fund, insurer, while in the employ of Hart & Clark Transfer Company, as a truck chauffeur, drove his truck to the pier of the defendant to pick up a shipment of three steel ship channels, which weighed 425 pounds each, and were twenty feet long. After backing up the truck to the pier, plaintiff went to the defendant's office to pay the freight bill. While he was doing this the defendant's stevedores had loaded two of the channels on the truck. As Hawkins was going back to the truck, the stevedores were bringing the third channel off the boat on a hand truck, but instead of taking it to plaintiff's truck, as they had the first two, they threw it on the floor. When Hawkins saw what they were doing he told them not to throw it on the floor, "to bring it right over to the truck, because it was easier to put it on, but they threw it on the floor anyhow." He testified that Mr. Lang, the defendant's pier superintendent, said, "What did they do that for, they know better than that." "I said, 'well, I told them not to throw it on the floor.' So with that they went and got this here foreman of the stevedores, Captain Dick, who 'called these two colored fellows over and to the one with a hand truck he said "Pick that thing up * * *" and when they picked it up the third one went and put the truck under it and, as he did, one of them let go and the other men couldn't hold it, and it come down and it hit the truck and bounced over,' and fell on and injured his foot. He said he did not give the three stevedores any orders or directions. 'Captain Dick gave them instructions and told them to pick it up. When he told them that I stepped back out of the way. When they started picking up 425 pounds, no one can't hold that, you know these fellows couldn't hold it. I jumped away and when I was pinned up against the pile of ladders I couldn't get back no further.' "

The defendant contends that in the facts as here related there is no evidence of primary negligence, because, as stated in its brief, "When the bar was dropped, the

expected happened, it bounced on the hand truck and on the plaintiff's foot"; in other words, he had voluntarily placed himself in a position of obvious danger (*Cooley on Torts,* [4th Ed.] sec. 489; *People's Bank v. Morgolofski,* 75 Md. 432, 23 A. 1027), a conclusion with which we do not agree. He might have felt, as he testified, that the load was too much for the stevedores to handle, but, if that belief was well founded, the work, according to his testimony, was undertaken and partly performed by the defendant's employees. If there was any failure in the means employed, this would be evidence, for the jury, of a lack of that degree of care and caution which the plaintiff had the right to expect.

The evidence offered on behalf of the defendant was that the stevedores were the fellow servants of the plaintiff, and it was no part of thir duty to load the plaintiff's truck. William W. Lang testified: "The Ericsson Line, of course, pays these stevedores for the time that they spent working on the consignee's shipment. * * * Neither Mr. Hawkins or I gave any orders to them as to how it should be done. I was about thirty feet away and it was my duty to watch this work. * * * I got the stevedores out of the gang and turned them over to Mr. Hawkins." A comparison of the testimony of Hawkins and Lang discloses such a dispute as to whose servants the stevedores were as to leave the decision to a jury. This conclusion is supported by the case of *Hilton Quarries, Inc. v. Hall,* 161 Md. 518, 158 A. 19, and is not in conflict with *Combustion Engineering Co. v. Hunsberger,* 171 Md. 16, 187 A. 825. In the opinion of this court there was legally sufficient evidence of negligence of the defendant's stevedores to go to the jury, if the jury should find that, at the time, they were not acting under the direction of the plaintiff. If they should find that they had completed the defendant's contract when they dumped the third channel on the pier, they could so find, all of which was fairly and properly submitted to the jury by the defendant's first and second granted prayers.

Assuming that there was primary negligence, the defendant contends that the plaintiff himself was guilty of negligence contributory to his injuries without which there would have been no damage. This is on the assumption that he should have foreseen everything would have happened just as it did. The plaintiff said when he saw "they were going to pick up 425 pounds, I stepped back out of the way, and when they picked it up the third one went and put the truck under it and as he did, one of them let go and the other men couldn't hold it and it come down and it hit the truck and bounced over, and I jumped and was pinned up to the pile of ladders there. I couldn't move no more." We do not find here a result which might have been expected, and against which the plaintiff was warned, as in *Wood v. Heiges,* 83 Md. 257, 269, 270, 34 A. 872, cited by the defendant. He did say he thought the job was too much for the three men to handle, which brings us back to the question of fact as to whose servants they were; if the defendant's, then it owed the plaintiff the duty of furnishing a force sufficient to do the work undertaken. The defendant's failure in this respect would put it in the position of using defective or negligently operated machinery or appliances from which injury results. The plaintiff thought he "stepped back out of the way," but when one stevedore let go he jumped, and thus tried to escape, but without success. The plaintiff is only required to use such care to avoid injury as a man of ordinary prudence would employ under the circumstances. In the case of *Stokes v. Saltonstall,* 13 Pet. 181, 193, 10 L. Ed. 115, 122, where the plaintiff was injured in jumping from a stage coach which was turning over, the court said: "It is not necessary that he should have been thrown off the coach; it is sufficient if he were placed, by the misconduct of the defendant, in such a situation as obliged him to adopt the alternative of a dangerous leap, or to remain, at certain peril; if that position was occasioned by the fault of the defendant, the action may be supported. On the other hand, if the plaintiff's act resulted from a rash

apprehension of danger, which did not exist, and the injury which he sustained is to be attributed to rashness and imprudence, he is not entitled to recover." *Cooley on Torts* (4th Ed.), sec. 488; *Western Maryland R. Co. v. State, use of Shirk,* 95 Md. 637, 53 A. 969. We do not find any evidence on which to base a finding of such negligence, or lack of care and caution, on the part of the plaintiff, as to justify the withdrawal of the case from the jury.

The only other question is the admission of the testimony of Dr. Weinberg as to the permanent effect of the plaintiff's injury, and its inclusion in the plaintiff's prayer as an element of damage. Dr. Weinberg had not only heard all the testimony (*Quimby v. Greenhawk,* 166 Md. 335, 171 A. 59; *Smith v. Dolan,* 170 Md. 654, 659, 185 A. 453), but had personally examined the plaintiff, and could thus testify to, as a fact, what conditions he found. *American Oil Co. v. Metz,* 158 Md. 424, 451, 149 A. 4, 565. The plaintiff was injured August 19th, 1936, the case tried October 11th, 1937, and he still suffered pain and limped, and the nature of the injuries and conditions testified to by Dr. Weinberg were sufficient for him to express an opinion of their probable duration. *Fleischman Transportation Co. v. Egli,* 163 Md. 663, 667, 164 A. 228; *Montgomery Bus Lines v. Diehl,* 158 Md. 233, 240, 148 A. 453. No error.

*Judgment affirmed, with costs.*