# BALTIMORE & OHIO RAIL ROAD CO. *vs.* ISRAEL THOMPSON.

A question was asked a witness, a *grazier,* "what is the difference between the value of the cattle depastured" on a certain tract of land, "compared with what it would have been had they been depastured quietly, and if they had not been disturbed by the making of the rail road?" HELD:

That this question was inadmissible, because it *assumes* there *was* a deterioration sustained by the cattle, *and* that it was owing to the *construction of the rail road,* which were facts to be proven, and, therefore, *for the jury* to find, even conceding the witness to be an *expert.*

The question to an *expert* must be *hypothetically* put: if the facts are doubtful, and *remain to be found by the jury,* an *expert* who has heard the evidence cannot give his opinion upon the case on trial, but may be asked his opinion upon a similar case *hypothetically* stated.

An experienced *grazier* is competent to testify, as *an expert,* in regard to the condition of cattle, and to causes affecting their health and weight, on a *supposed state of facts.*

Such a witness is competent to give his opinion of the *effect* of disturbance on cattle, but not to say, as matter of opinion, that the construction of a rail road through the pasture on which they were feeding, would disturb them and set them to running.

The disturbance being proven, or hypothetically put to the witness, the effect on the fattening properties of the cattle, may be given as a matter of opinion by an expert.

The answer of such a witness to a question, whether a certain cause was sufficient to disturb cattle and prevent their thriving? "I *suppose* that it would," is equivalent to saying, "I believe that it would," or, "it is my *opinion* that it would."

The 15th sec. of the act of 1826, ch. 123, the charter of the Baltimore & Ohio Rail Road Company, provides that the company may agree or con-

Balto. & Ohio Rail Road Co. *vs.* Thompson.

tract with the "*owner or owners*" of lands for the right of way, and in case they cannot agree, a jury shall be summoned to assess the damages, whose inquisition shall describe the land taken, and value "the *quantity* or *duration* of the *interest* in the same." Held:

1st. That the term "*owner*" includes every person having *any* title to, or *interest* in the land, capable of being injured by the construction of the road, and the interest of a *termor* or *lessee* cannot be annihilated by a subsequent *agreement* between the *landlord* and the company, made without his consent.

2nd. In such a case the compensation must be *apportioned* among the parties, according to the relative value and magnitude of their respective interests, and a *separate* inquiry had and a *separate* award of damages made upon the complaint and application of *each*.

A prayer that there is *no* evidence of a particular fact to be found by the jury, is erroneous, if there is *some* evidence thereof, though *slight*.

Damages from the non-thriving of cattle, owing to the construction of a rail road through the pasture on which they were feeding, are not remote, contingent or speculative, but are recoverable in an action of trespass, *quare clausum fregit*.

There is no error in rejecting a prayer which is *ambiguous*, and, therefore, calculated to *mislead* the jury.

APPEAL from the Circuit Court for Allegany county.

Trespass *quare clausum fregit,* brought by the appellee against the appellant, to recover damages for throwing down his fences, entering upon his tract of land called "Hoye's Big Pasture," and scattering, frightening and injuring his cattle, which were depasturing thereon, during the year 1850. The pleadings are sufficiently stated in the opinion of this court.

*1st Exception.* The plaintiff offered in evidence a lease of this pasture to him from John Hoye, for three years from the 5th of January 1848. The other evidence contained in this exception, which was taken by the defendant to the decision of the court below (PERRY, J.) in overruling its objection to a question put by the plaintiff to the witness, Baker, and his answer thereto, is fully stated in the opinion of this court.

*2nd Exception.* The plaintiff then proved by Baker that he was frequently in this pasture during the summer of 1850, with a view to purchase these cattle; that the cattle seemed to be restless and wild; that he saw at one time about sixty of them on the outside of the fence, and the rest going up on the

inside, and witness helped the plaintiff and his son to put them into the pasture; this was in August 1850; cattle were worth that season $2.50 per hundred, gross. The other evidence in this exception, which was taken by the defendant to the decision of the court below, in overruling its objection to another question put by the plaintiff to this witness, and the answer thereto, is also fully stated in the opinion of this court.

*3rd Exception.* The defendant then offered in evidence an agreement, or license, by John Hoye, dated the 8th of August 1848, granting permission to the rail road company to build their road through this land, and proved that, in the year 1850, on the section of the road passing through this pasture, there were only thirty or forty hands and from twelve to fifteen horses, and that there was no blasting on this section; that the witness, who was the resident engineer on the section, never heard any complaint from the plaintiff about disturbing the cattle, and that he had frequently seen them grazing close up to the road, where the hands were at work, and never saw them frightened. Baker was then recalled, for explanation, and stated that an experienced grazier can tell, by the look of cattle, whether they have been frightened and scared, or disturbed in the pasture. It was then admitted that the road was constructed through this pasture by the authority of the defendant, and that the fences were pulled down to the extent of the limits of the road, which is in all cases at least sixty-six feet, for the purpose of constructing the same. The defendant then proved by another witness that the plaintiff, in a conversation with him, spoke of the inconvenience of the construction of the road, and said he thought Hoye, his landlord, ought to abate the rent some $60 or $80, as a compensation to him therefor; that he had not yet paid his rent; and that he also went to the counsel of the company and offered to give up his claim if the company would pay the whole year's rent, ($130,) and the counsel thought the company ought not to be charged with the rent for the whole year, but only for a portion of it, but the plaintiff insisted upon the whole.

The defendant then submitted nine prayers, four of which were rejected, and the others granted, and need not be stated,

as no questions were made upon them. The prayers rejected were the *first, sixth, eighth* and *ninth.* Of these the *first* and *sixth* are sufficiently stated in the opinion of this court, and the others are as follows:

8th. That in estimating damages in this case, the jury will not allow for any that were remote, contingent or speculative upon the effects of the trespass complained of, and that the damages claimed on account of the cattle's non-thriving, are of that description.

9th. That the plaintiff is not entitled in this action to recover for any consequential damages he may have sustained; and that the non-thriving of his cattle, if the jury believe the same, would be consequential damages, if the jury shall believe they did not thrive because they were disturbed or frightened by the hands or laborers employed in constructing the road.

To the ruling of the court, in rejecting these prayers, the defendant excepted. The verdict and judgment were in favor of the plaintiff for $859.90, damages and costs, and the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON, and TUCK, J.

*Thos. J. McKaig* for the appellant, argued:

1st. That the question asked by the plaintiff in the *first* exception was inadmissible, because, 1st, there was no evidence offered to prove that the defendant, or its agents, had disturbed the cattle, and the question therefore *assumed* the very facts to be proved; 2nd, it was asking for a mere *conjectural opinion* of the witnesses. 1 *Wend.*, 196, *Murray vs. Bethune.* 4 *Do.*, 320, *Gibson vs. Williams;* and 3rd, that the testimony could only look to remote, contingent, or speculative damages.

2nd. That the question asked in the *second* exception was also inadmissible, because, 1st, it was asking for the opinion of the witness, without giving any facts to show on what the opinion was founded, 7 *Gill*, 10, *Brooke vs. Townshend;* 2nd, the question and answer were both so indefinite as not to amount to evidence on which the jury could found any judg-

ment, it not defining the degree of disturbance, nor specifying the manner in which the road was constructed, so that the court and jury might be able to judge whether its construction would necessarily injure the cattle; and 3rd, a *grazier* is not competent to testify as *an expert* in regard to the condition of cattle, and to causes affecting their health and weight.   2 *Porter,* 29, *Johnson vs. Ballew.   4 H. & McH.,* 63, *Mahoney vs. Ashton.   9 Conn.* 102, *Kinne vs. Kinne.   6 Do.,* 9, *Morse vs. The State.   1 Starkie on Ev.,* 154, *(6th Amer. Ed.)*

3rd. That the defendant's *first* prayer ought to have been granted, because it submitted all the evidence to the jury to determine whether Hoye was the *owner* of the land on the 8th of August 1848, and whether on that day he agreed with the defendant for the right of way. If Hoye was the owner of the land on that day, and sold the right of way to defendant, and the latter's entry on the land was in pursuance of this purchase, how could the plaintiff recover? If the plaintiff held the land comprising the right of way under a lease for three years, Hoye was not the *owner,* and the jury were competent to find that fact.   By the 15th sec. of the act of 1826, ch. 123, the charter of the defendant, the company were authorised to agree with "*the owner*" of any land for the right of way for their road, and this prayer, on all the evidence offered, submits to the jury the question, whether the company had so agreed with the *owner?*

4th. That the defendant's *sixth* prayer ought to have been granted, because there was no evidence in the cause from which a rational mind can infer that the plaintiff sustained any damages for the alleged injury to the cattle by frightening or scaring them, caused by the act of the defendant.   4 *Md. Rep.,* 283, *Thurston vs. Lloyd.   7 G. & J.,* 95, *Farmers Bank vs. Duvall.   4 Md. Rep.,* 421, *Sasscer vs. Farmers Bank.*

5th. That the defendant's *eighth* prayer ought to have been granted, because, 1st, damages that are remote and contingent, or speculative, upon the effects of the trespass complained of, ought not to have been assessed by the jury; and 2nd, damages claimed on account of the non-thriving of the cattle, from

the evidence in the cause, were clearly speculative, not sustained by any evidence from which a rational mind could infer damages, and the testimony was so light and inconclusive that the jury could not infer any *amount* of damages. 7 *H. & J.*, 37, 39, *Davis vs. Davis.* 6 *Md. Rep.*, 457, *Plank Road Co. vs. Bruce.* 9 *Gill*, 334, *Clarke's Admr. vs. Marriott.* 1 *McCord*, 489, *Massey vs. Craine. Ibid*, 584, *Bond vs. Quattlebaum.*

6th. That the defendant's *ninth* prayer ought to have been granted, because consequential damages ought not to have been assessed. The non-thriving of the cattle was not only consequential, but the testimony in reference to this point was "light and inconclusive," and no testimony whatever to fix it upon the defendant; for if it be admitted that the laborers on the road prevented the cattle from thriving, the company was not responsible for their trespasses. It would be easy to assign numerous reasons why the cattle did not thrive, quite as probable as that they were disturbed by the hands. There is no evidence that the cattle ever were frightened by any one in the company's employ. No testimony to show what they sold for, or that there was one dollar of loss on the sale of the cattle, or to show that the road was constructed in a manner to frighten cattle, or that the cattle were frightened by the construction of the road. 6 *Hill*, 523, *Crain vs. Petrie.* 3 *Md. Rep.*, 78, 79, *Stewart vs. Redditt.*

*William Price* for the appellee, argued:

1st. That Baker, being an *experienced grazier*, and knowing, particularly, all about these cattle, was competent to say to what extent they were injured in the matter of which he speaks, and that his evidence, taken in connection with his explanation brought out by the appellant, was admissible, and consequently there was no error in the ruling of the court below in the *first* and *second* exceptions. 1 *Greenlf. on Ev.*, sec. 440. 3 *Dana.*, 382, *Gentry vs. McMinnis.* 1 *Philips' Ev.*, 290. 2 *Pick.*, 304, 309, *Griffin vs. Brown.* 9 *Bing.*, 333, *Ramadge vs. Ryan.* 14 *Sergt. & Rawle*, 137, 141, *Kellogg vs. Krauser.* 4 *Cowen*, 355, *McKee vs. Nelson.* 2 *Philips' Ev.*, 761. 1 *Car. & Pay.*, 70, *Malton vs. Nesbit.*

11      v.10

4 *Pick.*, 158, 159, *Davis vs. Mason.* 10 *Barn. & Cres.*, 70, *Rickards vs. Murdock.* 3 *Md. Rep.*, 78, *Stewart vs. Redditt.* 7 *Gill*, 27, *Brooke vs. Townshend.*

2nd. That the defendant's *first* prayer was properly rejected. The demise from Hoye to the plaintiff is admitted by the rejoinder of the defendant, and this prayer *denies* it, and for this reason, if no other, is erroneous. But the demise was the property of the plaintiff, which the rail road company could not take, except upon just compensation. The estate and interest of a *termor* are within the words and intention of the 15th section of the charter of the defendant.

3rd. That the rejection of the defendant's *sixth* prayer was right; for there was evidence tending to prove that the cattle were frightened by the construction of the road, and if there was any, no matter how slight, the prayer was properly rejected. 6 *G. & J.*, 297, *Steam Nav, Co. vs. Hungerford.* 3 *Md. Rep.*, 431, *Scott vs. Bay.* 2 *Philips' Ev.*, 188.

4th. That there was no error in the rejection of the *eighth* and *ninth* prayers, because the injury to the cattle is laid in this case as *special damages.* 5 *Wels. Hurls. & Gordon*, 239, *Rigby vs. Hewitt. Ibid.*, 243, *Greenland vs. Chaplin*, and note on page 248. 3 *H. & McH.*, 510, *Johnson vs. Courts.* 1 *Greenlf. on Ev.*, sec. 254.

LE GRAND, C. J., delivered the opinion of this court.

This is an action of trespass *quare clausum fregit*, brought by the appellee, to recover damages from the appellant, for throwing down his fences, entering upon the land, scattering, frightening and injuring his cattle. To the declaration the defendant pleaded not guilty, and that the *locus in quo* was the proper soil of the defendant; that it was the soil, at the time of the alleged trespass, of one John Hoye, by whose license the defendant entered, &c. To these pleas there were replications, and to the latter, rejoinders, the pleadings being carried on until issue was joined. It is not necessary the pleadings should be more particularly noticed than to state the questions which they substantially present. The plaintiff, under a demise to him, executed by John Hoye, on the fifth

Balto. & Ohio Rail Road Co. *vs.* Thompson.

day of January 1848, claimed, as lessee, the possession and enjoyment of the freehold until *the first day of January* 1851. The rail road company, in virtue of a license granted to it by John Hoye, on the *8th day of August* 1848, claimed the right to enter upon the land.

At the trial the demise of Hoye to the plaintiff was proven, as was also the license from him to the defendant. The plaintiff also proved the entry upon the land by the agents of the defendant, and that at the time of such entry he had at pasture a large number of cattle. It was shown by competent testimony that the cattle had not improved by the depasture. With a view of showing that their unimproved condition was owing to the acts of the agents of the defendant, the plaintiff called to the stand Nicholas Baker, an experienced grazier, who testified that he has been in the business nearly all his life, and for himself for the last ten years. "That the year 1850 was an average season. That he saw the cattle in April or May 1850 as they came in; they were a good lot of cattle, rather better than an average; that he was in the pasture several times during the season of 1850, once in August. That he thought the cattle were dissatisfied; that cattle disturbed will not thrive; that cattle were on the rise. Part of the cattle were put into this pasture, about one hundred and fifty or one hundred and sixty. The rest of the cattle were put on the mountain. We (the graziers) aim to get them out by the 1st of October. When the cattle left they were not in a condition to be sold for beef. They were too good for straw feeders." He was then asked the following question: "What is the difference between the value of the cattle depastured on Hoye's Big Pasture, (the *locus in quo*,) in the fall, compared with what they would have been had they been pastured quietly, and if they had not been disturbed by the making of the rail road." The witness answered, "From seven to ten dollars per head." To the admissibility, both of the question and answer, the defendant objected, and this constitutes the first bill of exceptions.

We think the court erred in allowing the question. The question assumes what had not been proved, to wit, that any

deterioration which the cattle had sustained, and, also, that they had deteriorated, was owing to the rail road construction. Conceding the witness to be an *expert* the question was improper. The fact to be demonstrated was, that the cattle had been injured by their disturbance by the defendant; it was a fact to be proven and not assumed, and therefore a question *for the jury.* In such a case the question to an *expert* ought to be put hypothetically. In the 440*th section* of 1 *Greenleaf on Evidence,* is this: "If the facts are doubtful, and *remain to be found by the jury,* it has been held to be improper to ask an *expert,* who has heard the evidence, what is his opinion upon the case on trial, though he may be asked his opinion upon a similar case, hypothetically stated." No doubt the question was framed with the design to come within the province of this distinction, but, in our judgment, it does not do so. Had the question been thus put, the demands of the rule would have been gratified: "If the construction of a rail road, such as that of the defendant, through the pasture where cattle are feeding, disturbs such cattle, would, in your opinion, such disturbance have the effect to prevent their fattening as well as if they were not so disturbed?" We are of opinion the court erred in the admission of what was objected to, and therefore reverse it on this exception.

After the testimony mentioned in the first exception, the plaintiff, by the same witness, Baker, gave in evidence other facts in regard to the condition of the cattle, and among the matters testified to by him is the following: "I do not know what caused the cattle to run. I never saw any body in the employ of the rail road company disturbing those cattle. I never saw anything disturbing them other than natural causes. I cannot say, on my oath, what prevented those cattle from thriving in that pasture." The plaintiff then propounded the following question: "Was the construction of the rail road through this pasture, and the employment of hands and horses by the company, sufficient alone, without any other cause, to disturb the cattle and prevent their thriving?" He answered: "He *supposes* that it would." We regard the language of the witness as equivalent or tantamount to,—I *believe* that it

would, or, it is my *opinion* that it would. If this be so, then the admissibility of the answer and the propriety of the question will depend entirely on the solution of another, namely, whether a grazier is competent to testify, *as an expert*, in regard to the condition of cattle, to causes affecting their health and weight, on a *supposed state of facts*. We are of opinion he is competent.

On questions of science, skill or trade, or others of the like kind, persons of skill may testify not only to facts, but are permitted to give their opinions in evidence. 1 *Greenlf. Ev.*, *sec. 440*. And so accordingly it has been held, that "persons accustomed to observe the *habits* of *fish* have been permitted to give in evidence their opinions, as to the ability of the fish to overcome certain obstructions in the rivers which they were accustomed to ascend. *Ibid.* If this be so, we see no reason why one who is familiar, from long observation, with the habits of cattle shall not be permitted to give his opinion as to the probable influence of certain causes on their condition. In this record it appears, from the testimony of Baker, that "an experienced grazier can tell by the look of cattle whether they have been frightened, and scared or disturbed in the pasture."

If the question had been confined to the effects of disturbing the cattle by the construction of the road, we think the objection would have been properly overruled. But it went further, and sought to obtain from the witness his opinion, whether the construction of a rail road would frighten or disturb cattle. We think that it needs not an expert as to the habits of cattle to determine such a question. The best evidence would be the observation of those who had seen them disturbed by the construction of the rail road; but if opinion on the question was admissible, we think that of persons who had been engaged in making rail roads should be preferred to the opinions of those acquainted with the habits of cattle, where the case does not also show that the witness had any practical experience of the effect on cattle of making a road through grounds on which they are left to pasture. We consider the witness was competent to give his opinion of the effect of disturbance on cattle;

# 86 MARYLAND REPORTS.

but not to say, as matter of opinion, that working on a rail road would disturb and set them to running. He might say the cattle appeared to have been frightened. But how can he say that the making a rail road has frightened them? The disturbance being proven, or hypothetically put to the witness, the effect on the fattening properties of the cattle may be given as a matter of opinion by an expert. The objection to the question should have been allowed.

The record states it was "*admitted,* that the rail road constructed through this pasture was so constructed by the authority of the defendant; and that the fences were pulled down to the extent of the limits of the road, which is in all cases at least sixty-five feet, for the purpose of constructing said road."

The defendant submitted to the court nine prayers, the first, sixth, eighth and ninth of which were rejected, and the second, third, fourth, fifth and seventh granted.

The first prayer asks the court, substantially, to instruct the jury, that if they shall believe from the evidence that John Hoye was the owner of the tract of land in question on the 8th day of August 1848, and that Hoye then agreed with the defendant for the purchase, or use and occupation of that part of the tract of land upon which the rail road was constructed, and that the defendant afterward entered into possession of the same under the agreement, then the plaintiff cannot maintain this action.

We suppose this prayer was drafted with special reference to the 15th section of the act of 1826, chapter 123. It is the act incorporating the defendant. Its 15th section provides, that the defendant, or its agents, may agree and contract "with the owner or owners of any land, earth, timber, gravel, &c., which may be wanted for the construction or repair of any of said roads or of any of their works, for the purchase or use and occupation of the same." The section then provides, that if the parties cannot agree, that then a jury shall be empannelled, in the manner pointed out, to assess damages and to make the condemnation. After a detail, as to the manner of getting together and the number of the jury, it provides, that the inquisition so authorised "shall describe the property taken,

or the bounds of the land condemned, and the *quantity* or *duration* of the *interest* in the same, valued for the company.''

In the present case the appellee had a leasehold interest in the property which would not expire until the first day of January 1851. Hoye, under whom the defendant claims, had made a contract with him in January 1848 for this term. His license to, or agreement with the defendant, was not made until August of the same year; and the question now is, under this first prayer, whether it was competent to him and the defendant to annihilate the plaintiff's interest in the land without his consent, or even without consultation with him, as appears to be the case in this instance? It seems to us to state the question is to resolve it in the negative. It is an exercise of power such as to shock our every idea of justice. The interest of a termor, in the eye of the law, is just as potential as that of the owner of the fee, although in fact it may not practically be so valuable. No man's property can be taken from him without just compensation, nor in our judgment, was it within the contemplation of the Legislature, when it passed the act of incorporation, to confer any such power, even were it admitted it possessed the constitutional ability to do so. The language of the section sufficiently negatives any such supposition.

The 13th section of the act of 1825, chapter 180, is identical in its language with the 15th section of the act of incorporation of the defendant, and inasmuch as it was very carefully considered and elaborately discussed by the learned judges of the sixth judicial district, under the late constitution, in the case of the *Tide Water Canal Co. vs. Archer,* to be found in the appendix to *9th Gill & Johnson,* and as we concur with the opinion expressed by them, we adopt their language as applicable to the point involved in the prayer. It is there said: ''The term 'owner,' used in the 13th section of the act of 1825, ch. 180, is evidently intended to include every one having any title to or interest in the land, because it is there provided that the valuation of the jury 'shall be conclusive upon all persons, and shall be paid by the president and directors of the canal company to the owner of the land, or

his legal representatives, and on payment thereof, the said company shall be seized of such land as of *an absolute estate in perpetuity as* if conveyed by the owner.' In *Ellis vs. Welch*, 6 *Mass.*, 251, recognized in *Parks vs. Boston*, 15 *Pick.*, 203, this point was so settled. In this last case the court say: 'It has been heretofore decided by this court, and apparently upon much consideration, in the case of *Ellis vs. Welch, ubi sup*, that the term 'owner,' in this statute, includes every person having an interest in real estate capable of being damnified by the laying out of a street through or over it, and is equivalent to the description of 'any person damaged in his property,' as used in the general act regulating the laying out of highways. In the same case it is remarked by the court, after saying that in the valuing a piece of land there may be several entirely distinct interests therein, that 'such compensation, therefore, must be apportioned among them, according to the relative magnitude and value of their respective interest, and, of course, *there must be a separate inquiry and a separate award of damages,* upon the complaint and application of each.' '' The court did not err in the rejection of the prayer.

We also think the sixth prayer was properly refused. It asked the court to say there was *no* evidence in the cause to entitle the plaintiff to recover any damages for the alleged injury to the cattle of the plaintiff by frightening or scaring them, caused by the construction of the said rail road by the said defendant.

Although the evidence is slight, yet we cannot say there is *no* evidence of damage. The fact of the entry on the land and the dispersion of the cattle is proven, and if to this be added the opinion of the witness Baker, we have *some* evidence which ought to be pronounced upon by the jury.

The court properly rejected the eighth prayer, because it denied the right of recovery for ''the damages claimed on account of the cattle's non-thriving.'' If the non-thriving of the cattle was owing to the making of the road, then whatever damage they sustained because of it, was neither remote, contingent or speculative, but recoverable. The prayer raises no question as to the *sufficiency* of the proof. See 2 *Greenlf. on Evidence, sec.* 273, and *Johnson vs. Courts*, 3 *H. & McH.*, 510.

The court also did right in the rejection of the ninth prayer; if for no other reason than its ambiguity. It was calculated to mislead the jury. It does not clearly appear from its language whether it meant to assert, that the defendant was not responsible for the conduct of its hands or laborers employed in the construction of the road, or whether it merely meant to assert that it was not responsible for their conduct when not engaged in the work of the defendant. If the former, it was clearly wrong. See authorities cited in reference to the eighth prayer.

*Judgment reversed and procedendo awarded.*