MONTGOMERY BUS LINES, INC. *v.*
LORETTA DIEHL.
[No. 59, October Term, 1929.]

*Decided January 10th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*S. R. Bowen* and *Robert Peter, Jr.,* with whom was *H. C. Smith* on the brief, for the appellant.

*Saul Praeger,* with whom was *Albert M. Bouic* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

In a suit arising out of a rear-end collision of motor vehicles, the defendant, owner of the rear vehicle, appeals

from a judgment for damages for personal injuries caused to the plaintiff, a passenger in the forward car.

The plaintiff, Miss Diehl, now appellee, was riding by day as a guest in an automobile driven by Gilbert S. Haus, along a highway in Montgomery County, when the accident occurred. They came to a point where an automobile in charge of two ladies was off the hard surface of the road, unable to move forward because the surface yielded so that the wheels merely spun around, and Haus drew aside to his right, leaving only his left rear wheel on the hard surface, intending to tow the ladies out. He testified, and the testimony of Miss Diehl is to the same effect, that he first gave warning to any one in his rear, by holding out his hand, then drew aside, put on his emergency brakes, turned off his ignition, told his companion what he intended to do, rose up, reached over in the back of his front seat to get a tow rope which he thought he had there, and, having failed to find it, was taking his keys from his pocket, when his automobile was struck in the rear by the defendant's motor bus, with the result that Miss Diehl was injured. The driver of the bus, Stacey Belt, on the other hand, testified that, as he came along about thirty feet behind the automobile of Haus, the latter stopped without warning, suddenly, and so near that it could not be avoided by turning, and the brakes could not stop the bus quickly enough. There was evidence too, of cars running between the automobile and the bus, and of their passing Haus after he stopped, but the testimony on this is not uniform.

Exceptions to rulings on prayers have been pressed first, especially one to the court's rejection of the defendant's prayer that a verdict be directed in its favor for want of legally sufficient evidence of negligence on its part, causing the accident. But this court agrees in that action, because, irrespective of all other evidence, there was legally sufficient evidence to support a jury's finding of negligence on the defendant's part in the testimony, already recited, that, between the stopping of the Haus automobile and the collision, a sufficient time elapsed for Haus to bring his car to a stop, with

brakes on and ignition shut off, and to arise and look behind the seat for a rope. Accepting that testimony as true, a jury might from those facts alone, we think, reasonably conclude that the bus driver, if driving with ordinary care, would in that period of time have seen the Haus automobile stopping, and would have driven around it. That evidence was contradicted, but the court could not, of course, direct the jury's choice in the resulting conflict.

The second ruling argued was one which excluded from consideration by the jury a hypothesis of contributory negli-gence on the plaintiff's own part. A prayer on her behalf, her second, asked an instruction that contributory negligence of the driver of the automobile in which she was a guest could not be imputed to her and defeat her recovery. And a sixth prayer of the defendant asked an instruction on a possi-ble finding of contributory negligence on the plaintiff's part in failing to give attention to the danger into which she was being driven, and to intervene in the driver's actions with suggestions and protests, and otherwise to exercise care to avoid the accident. Both of these prayers are referred to as based on a hypothesis of contributory negligence on the part of the plaintiff herself, but her prayer is concerned only with an imputation to her of the negligence of the driver, Haus, and the rejection of the defendant's sixth prayer is the only action which raises the question argued. *Chiswell v. Nichols,* 137 Md. 291, 303.

The contention that the jury should have been permitted to find the plaintiff negligent, and should have been instructed as to the effect of such negligence, is conditional upon a find-ing of negligence in the driving of the car in which she was riding, and the negligence which the jury might have found in the driving would be in Haus' failing to give warning of the intention to stop, by holding out his hand, and in his coming to a stop too suddenly to permit the bus following to avoid collision. If there was any reasonable possibility of a finding of negligence on the plaintiff's part in such negligence of Haus, the question should have been referred to the jury, as the defendant prayed. *Wash., B. & A. R. Co. v. Stale,*

*use of Hall,* 136 Md. 103, 109; *Chiswell v. Nichols, supra; Chesapeake & Pot. Telephone Co. v. Merriken,* 147 Md. 572, 578; and cases collected in notes in 18 *A. L. R.* 309, 352, 22 *A. L. R.* 1294, 41 *A. L. R.* 767. But negligence by a passenger, not herself driving, which would defeat her recovery, must be, in effect, a uniting with the driver in incurring the resulting danger, and it involves an opportunity at least to acquiesce in the negligent action. And we do not see how a jury could find such an opportunity in the single, quick, momentary actions of failing to hold out the hand and stopping too suddenly. On the contrary, interference by a passenger in such details of operation would seem more likely to constitute negligence. Each such question is to be decided upon the facts of the case in which it is raised, and we do not lay down a rule for determining what may constitute contributory negligence on a passenger's part on facts testified to in another case; but on the testimony in this case we agree in the trial court's ruling on the defendant's sixth prayer. *United Railways Co. v. Biedler,* 98 Md. 564, 574.

Three prayers offered by the defendant, its thirteenth, fourteenth, and fifteenth, and a special exception taken by it to a third prayer of the plaintiff, presented questions of the extent of injuries for which damages might be awarded. According to the testimony, the plaintiff sustained a blow or blows about the face, principally about one eye. There were cuts, and a small scar was at the time of trial still discernible near the eye. There was no bone fracture. She lost ten days time from her employment, or, in money, about fifty dollars. Her evidence is, however, that she has suffered since the accident from nervousness, headaches, loss of weight, and anaemia, and physicians testifying in her behalf said that, as they could not explain the continuance of the headaches from what they found, they inferred that there might be an injury to the brain or its covering. One physician, Doctor Enfield, testified that, in view of the lack of improvement in the condition between the time of the accident and that of the trial (seven months), he felt that the headaches would be permanent. Other physicians who testified for her said that in their

opinion rest was a necessary treatment for the case, a rest from work of from two to six months, and that if she did not get it her condition might be permanent. These physicians added that, even with the proper amount of rest, it was not certain that the plaintiff would be entirely cured, that the headaches might last a very long time, and perhaps be permanent. These other physicians saw only a possibility of permanency.

This being the situation on the evidence, the defendant offered a prayer, its thirteenth, for an instruction that if the jury should find that the rest treatment would bring about or help the complete recovery of the plaintiff, and that her present condition or any part of it was due to a refusal to submit to the treatment, the jury could not take into consideration any damages based upon permanent injury or disability. And a fourteenth prayer asked an instruction to exclude whatever injuries the jury might find to have been suffered because of a failure to adopt the rest cure. It is true that any part of the plaintiff's damages which might be regarded as the result of her unreasonable neglect to adopt a cure, rather than of the accident, could not form a basis of recovery. *Hendler Creamery Co. v. Miller,* 153 Md. 264, 272. But the limitation follows from unreasonable neglect, and not alone from lack of treatment which testimony now might show to have been obtainable and likely to reduce injuries.

As to the damages sustained so far in this case, we think there could be no finding of unreasonable neglect to adopt a remedy, because it nowhere appears that the regular attending physician advised the rest cure. He treated the plaintiff with sedatives only, and she appears to have followed his instructions completely. The other physicians who examined the plaintiff later, and who were clear that a rest would effect a cure in large degree, or altogether, do not appear to have prescribed that treatment at any considerable time before trial, if they did at all. And as to confining recovery for damages in the future, by excluding those, if any, which might be continued only by failure to adopt the cure, we find that neither of the instructions requested in these prayers

quite fits the case, for both are based upon a hypothesis of past refusal to adopt the cure, which, as has been said, the jury could not find as a fact. However desirable it may have been to have specific instructions given on this point, exactly those prayed by the defendant would not serve the purpose and could not be granted. For these reasons we find no error in the rejection of the defendant's thirteenth and fourteenth prayers.

The defendant's fifteenth prayer was for an instruction that there was no evidence that the plaintiff had suffered any injury which would permanently impair her ability to follow her usual avocations. And a special exception to the granting of a third prayer of the plaintiff is to be considered at the same time. That third prayer was one on the measure of damages, in the form habitually used in suits on personal injuries in this state since its use in *Stockton v. Frey,* 4 Gill, 406, 414, 422, and which instructed the jury to consider whether the plaintiff's present condition in consequence of her injury was in its nature permanent, and how far, if at all, it was calculated to disable her from engaging in those employments for which in the absence of such injury she would have been qualified. And the special exception denied the existence of any proof of injury calculated to disable the plaintiff from engaging in such employments, or that her injuries were permanent. In Doctor Enfield's statement that he felt, in view of the absence of improvement between the time of accident and time of trial, that some of the injury was permanent, there is some evidence of permanency as the plaintiff's prayer supposes. We think the meaning of the answer may be taken as an expression of opinion that this is so. *Balto. & O. R. Co. v. Thompson,* 10 Md. 76, 84; *United Laundries v. Bradford,* 133 Md. 363, 367; *Agricultural & Mech. Assn. v. Gray,* 118 Md. 600, 604; *Wash., B. & A. R. Co. v. Cross,* 142 Md. 500, 510. And in view of this it was not possible for the trial court to rule that there could be no finding of permanent injury, as urged in the special exception. And as to the finding, contested in that exception, and in the defendant's fifteenth prayer, of permanent impairment

of the plaintiff's ability to follow her usual employment, it seems to this court that, notwithstanding a lack of direct testimony of impairment in that respect, and notwithstanding that the plaintiff had lost only ten days from her work, the court could not deny the jury a right to infer a permanent impairment of working ability, if they should find the permanent duration of nervous headaches which Doctor Enfield anticipated. We find no error, therefore, in the granting of the plaintiff's third prayer, or in the rejection of the defendant's fifteenth.

Taking up exceptions to rulings on evidence, we find those pressed to fall into two groups, one of exceptions to the admission of repetitions by witnesses of supposed statements by the defendant's driver, after the accident, in explanation of his running into the automobile, and the other of those to the admission of the opinion of Doctor Enfield that he felt that the plaintiff's nervous headaches would be permanent. As to the first group, it is not disputed that a repetition, in the plaintiff's evidence in chief, at least, of statements of the bus driver, would be mere hearsay, and inadmissible unless those statements were utterances constituting part of the accident itself, or, in legal phraseology, part of the *res gestae*. *Grzboski v. Bernheimer-Leader Stores,* 156 Md. 146, 148; *Baltimore v. Lobe,* 90 Md. 310; *Robinson v. State,* 57 Md. 14, 20; *Miller v. State,* 8 Gill, 141, 144.

On the plaintiff's case in chief it was testified, first, without objection, that a few minutes after the accident, when those in the automobile and those in the bus had gotten out and gathered about the automobile, and a Mr. Townsend, who had driven by, stopped, drove back, and joined the group, Belt, the defendant's driver, in reply to a question, said that he had glanced at the car which was off the road, and when he glanced back the automobile ahead had stopped and he was too close to miss it. Then the plaintiff herself, in giving her testimony, was asked what Mr. Belt said after she had been helped out of the car, after several people had put water on her head, and Belt came up by the car. She answered, without objection, that Belt said he was looking in the opposite

direction at the car in the ditch, and, when he saw the Haus automobile, was too close to it. And she added that Belt said that when he put his brakes on they failed; and to this addition objection was made. The fourth, fifth and sixth exceptions were taken to the admission of the testimony. Here, as in many cases, the question of identity of the verbal act with the transaction itself is difficult to decide with certainty, but a majority of this court is of opinion that the decision of the trial judge in this instance was not erroneous.

In cross-examination of Belt, he was asked whether he had not made similar explanatory statements at various times after the accident, and after he had denied doing so, witnesses were introduced in rebuttal to repeat such statements heard by them at these subsequent times. And it is contended on behalf of the plaintiff that the statements, so repeated, were now admissible to impeach the credibility of Belt. They were admissible for that purpose, and the court was justified in taking them to be honestly introduced for the purpose, we think. They could not, of course, serve as proof of the facts stated. *Mason v. Poulson,* 43 Md. 161, 176; *Stirling v. Stirling,* 64 Md. 138, 148; *Belvedere Bldg. Co. v. Bryan,* 103 Md. 514, 531; *Chesapeake Beach R. Co. v. Donahue,* 107 Md. 119, 128. But no question of improper use of the evidence is raised. The tenth, eleventh, twelfth, and thirteenth exceptions bring up the court's rulings on the impeaching evidence for review; and we find the rulings so excepted to correct.

There remains to be reviewed only a denial of a motion in arrest of judgment filed by the defendant after verdict rendered. This, too, was made the subject of exception, as it should not have been. *Davis v. Carroll,* 71 Md. 568, 569; *Expressmen's Assn. v. Hurlock,* 91 Md. 588, 591. The grounds assigned for the motion were general: an insufficient statement of a cause of action in the declaration, a variance between the allegations and the proof in respect to the character of injuries sustained, and other grounds more generally stated. But in argument the insufficiency of proof on the exact injuries alleged, and a variance between the proof and the allegations of injuries, were the grounds relied on. To

those it seems sufficient to say that they are not, and never were, grounds for a motion in arrest of judgment. Such a motion was designed to put in question the sufficiency of the record as it stood in the trial court to show a basis for a judgment against the defendant. *Evans, Maryland Practice,* (1839), 330. And the testimony is not regarded as a part of the trial court record at the time such a motion would be filed. 2 *Poe, Pl. & Pr.,* sec. 312. By statute now (Code, art. 75, sec. 11), a motion in arrest of judgment is not permitted to raise any question which could have been raised by demurrer, and in consequence of this the motion has, for most purposes, at least, been abolished. 1 *Poe, Pl. & Pr.,* sec. 704. The use of the motion to raise a question of variance between pleadings and proof is not prohibited by that statute, but it was and is improper because not within the office of such a motion.

We find no error, then, in any of the rulings excepted to.

*Judgment affirmed, with costs to the appellee.*