STATE, USE OF CREASEY ET AL. *v.* PENNSYLVANIA
RAILROAD CO.

[No. 152, October Term, 1947.]

588

*Decided May 21, 1948.*

*Rehearing Denied July 20, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and HENDERSON, JJ.

*Ernest C. Clark* and *W. Albert Menchine,* with whom were *Charles E. Hearne, Jr.,* and *Michael Paul Smith* on the brief, for the appellants.

*Frederick W. C. Webb* and *Amos W. W. Woodcock,* with whom were *E. Dale Adkins, Jr.,* and *Woodcock, Webb, Bounds & Travers* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

After the decision of this court in *Penn. R. Co. v. State, use of Brewer,* 188 Md. 646, 53 A. 2d 562, 567, that case and seven other cases arising out of the same crossing accident at Fruitland, Maryland, on February 5, 1945, were consolidated and tried before the court and a jury, in the Circuit Court for Wicomico County. From judgments upon separate verdicts for the defendant in each case, the cases come here on appeal. The appellants' chief contentions are that the trial court erred (1) in rejecting certain prayers offered on behalf of the plaintiffs, (2) in granting certain prayers offered on behalf of the defendant, (3) in the admission of certain evidence.

In our opinion in the former appeal we described the accident in detail. Just about dawn a southbound freight train, engaged in a switching operation, blocked the crossing and caused automatic warning signals, flashing red lights, to be set in motion. A line of motor vehicles was halted on the west side. The engine then backed to the north, clearing the crossing, and the vehicles started across. Johnson's truck, the fourth in line, was struck by a northbound train. The plaintiffs in that case charged negligence on the part of the defendant (1) in the conduct of the switching operation and (2) in the operation of the northbound train. We held that it was reversible error not to instruct the jury that there was no legally sufficient evidence from which the jury might find negligence in the operation of the northbound train, because "according to the undisputed testimony the engineer sounded his whistle and bell, the brakes were in proper condition, and he stopped as soon as he could after he became aware that the truck was in a position of danger."

We held, however, that the case was properly submitted to the jury upon the first issue as to negligence in the conduct of the switching operation. We held that certain rules of the defendant relating to switching operations were properly introduced in evidence, along

"with testimony designed to show a violation of the rules, in that no flagman was left at the crossing when it was temporarily cleared." We pointed out that the plaintiffs "also produced testimony as to a custom or practice of the defendant to provide a flagman during switching operations, which were conducted daily at this point. They also produced tesntimony that the engineer of the southbound train had seen the northbound train coming before he backed up and cleared the crossing." We also said: "Three witnesses testified that a flagman was stationed there immediately prior to the accident, and climbed on the train when it moved to the north. Under such circumstances, the departure of the flagman might be construed as an implied invitation to cross. There was also direct testimony that the engineer saw the approaching train, but nevertheless cleared the crossing without leaving a flagman there."

We find nothing in the record in the case at bar to require any qualification of the foregoing analysis of the situation. However, there was additional testimony in the present case bearing upon the issue of contributory negligence. The truck in question was a Chevrolet panel truck, with longitudinal seats behind the driver's seat, and no side windows, except those on each side of the driver's seat. On the front seat were Johnson, the driver, Townsend and Creasey. On the right side in the rear, were Doane, Brewer and Gittings. On the left side were Otho Miles, Alton Miles and Niskey. There were two other occupants on the rear seats who are not parties to this litigation. Otho and Alton Miles were asleep.

Niskey testified that when the truck came to a stop, he saw Johnson put his elbows on the wheel and his hands under his jaw; that Johnson never looked to his right before driving on the tracks, although for a space of at least 30 feet the view was unobstructed; that Johnson followed the other cars across the tracks, and as they came to the southbound tracks, Doane and Creasey suddenly called out to Johnson "watch out for

that train", or "watch that train, Harvey". The witness could not see out of the truck, except straight ahead. He testified he heard no whistle or bell, did not listen for any, as he was not paying attention. He was aware of the stopping and starting of the truck, and saw the flashing signals continuously in operation.

1. Plaintiffs' prayer No. 1, offered in "all cases", asked the court to instruct the jury that there was no evidence legally sufficient to show any negligence on the part of Brewer, Townsend, Otho Miles, Creasey, Gittings, Alton Miles, Doane and Niskey, directly contributing to the injuries and deaths complained of. It is not contended that the driver's negligence, if any, could be imputed to the passengers, who were Johnson's employees, or that the negligence of any one passenger could be imputed to another. Technically the prayer, in its composite form, could not have been granted if there was legally sufficient evidence of negligence on the part of any one of the several plaintiffs. For the purpose of this appeal, however, we shall treat the prayer as if it had been offered severally in each case.

The general rule was stated in *Baltimore C. & A. R. Co. v. Turner*, 152 Md. 216, 228, 136 A. 609, 614: "One riding whether as an invited guest in a private car, or as a passenger in a public conveyance such as a taxicab, cannot under all circumstances be expected to be constantly on the lookout for possible danger, and to distract and confuse the driver by a steady flow of warning admonitions, but he is entitled to rely to some extent at least upon the vigilance of the driver if he appears to have ordinary skill and experience. If, however, the passenger knows, or should as a reasonably cautious and prudent person know, that danger may follow the operation of the car in a particular manner or in a particular course, it is his duty to take such measures as may be open to him to avoid it, and he is guilty of negligence if he fails to do so. And the place which a passenger occupies in an automobile is also impor-tant in determining whether he exercised reasonable

·care and prudence to detect and avoid danger, for one on the front seat with the driver may have a far better opportunity of discovering any danger ahead in the course of the car than one on the back seat. And whether under the circumstances of a given case the failure of a passenger to discover danger and to do what he can to avoid it is negligence or not, is usually a question for the jury." See also *Dashiell v. Moore,* 177 Md. 657, 672, 11 A. 2d 640.

The cases in which this court has approved the granting of a peremptory instruction for the plaintiff on the issue of contributory negligence are distinguishable from the instant case. In *Garozynski v. Daniel,* 190 Md. 1, 2, 57 A. 2d 339, 341, the plaintiff, while standing beside his parked car, was run down by a car coming diagonally across the street from the opposite direction. In *Montgomery Bus Lines v. Diehl,* 158 Md. 233, 238, 148 A. 453, 455, the plaintiff was a passenger in a car struck from the rear when it made a sudden stop. It was said: "negligence by a passenger, not herself driving, which would defeat her recovery, must be, in effect, a uniting with the driver in incurring the resulting danger, and it involves an opportunity at least to acquiesce in the negligent action. And we do not see how a jury could find such an opportunity in the single, quick, momentary actions of failing to hold out the hand and stopping too suddenly." Compare *Greer Transportation Co. v. Knight,* 157 Md. 528, 539, 146 A. 851, 855, another rear-end collision case. In *United Rys. v. Biedler,* 98 Md. 564, 572, 56 A. 813, the plaintiff (guest) saw the driver stop, look and listen before driving on a street car track. His own view was obstructed. It was held that no inference of negligence contributing to the accident could be drawn.

On the other hand, in *United Rys. v. Crain,* 123 Md. 332, 350, 91 A. 405, it was held that a peremptory instruction was improperly granted, where the guest failed to warn the driver that he was approaching a crossing. And in *State v. Lupton,* 163 Md. 180, 192, 161 A. 393,

398, it was said: "What was said in those cases [*Baltimore C. & A. R. Co. v. Turner, supra; Kent County Com'rs v. Pardee,* 151 Md. 68, 76, 134 A. 33, and *Montgomery Bus Lines v. Diehl, supra*] has reference to unexpected dangers encountered on the highways, and not to such dangers as everyone crossing a railroad track, passenger as well as driver, is bound to look out for". Se also *Restatement, Torts,* § 495(c), and *Bastian v. B. & O. R. Co.,* 3 Cir., 144 F. 2d 120, 124. Compare *Valera v. Reading Co.,* 349 Pa. 123, 36 A. 2d 644, 646.

In the case at bar we may assume, without deciding, that Johnson was guilty of negligence as a matter of law, in driving on the track without looking. Townsend and Creasey, in the front seat, had the same opportunity to see as Johnson, and we think the question whether they could have warned the driver sooner than they did, after they became aware of his inattention to the oncoming train, and his intention to proceed, was properly one for the jury. Compare *Baltimore & O. R. Co. v. McCabe,* 133 Md. 219, 104 A. 465. The passengers in the back seats did not, of course, have the same opportunity to see the northbound train, but they could see the flashing signals, and observe the driver's inattention, and it is inferable that they could have heard the whistle of the approaching train. Even as to those who were asleep, the jury might infer that their action in blindly trusting their safety to the driver was unreasonable under the circumstances. The prevailing view seems to be that while falling asleep is not negligence *per se,* it may be considered by a jury as a contributing factor. *Fry v. Smith,* 217 Iowa 1295, 253 N. W. 147; *Cody v. Bennett,* 177 Wash. 199, 31 P. 2d 83; *Austin v. B. & M. R., N. H.,* 197 A. 809; *Frank v. Markley,* 315 Pa. 257, 173 A. 186; *Austine v. Penn. R.,* 342 Pa. 423, 20 A. 2d 774. Compare *Powers v. State,* 178 Md. 23, 11 A. 2d 909. Our conclusion is that the plaintiffs' No. 1 prayer was properly refused. We also find no error in the refusal of the plaintiffs' prayers Nos. 3, 5 and 6, which were predicated upon negligence

of the defendant, without reference to contributory negligence on the part of the plaintiffs.

We find no error in the rejection of the plaintiffs' prayers Nos. 4, 7 and 9, which sought peremptory instructions as to the application of the rules of the defendant, offered in evidence, and as to the negligence of Johnson. These prayers were erroneous for the reason, if no other, that they attempted to segregate single acts of negligence. Their subject matter, in any event, was covered by the other granted prayers.

2. The appellants object to the granting of defendant's prayer No. 2, which instructed the jury that if they should find that the accident was caused solely by the negligence of Johnson, their verdict should be for the defendant, on the ground that it was misleading. The prayer stated a correct principle in the abstract. *Yellow Cab Co. v. Lacy,* 165 Md. 588, 595, 170 A. 190, and cases there cited. It would have been clearer if it had contained the phrase "without negligence on the part of the defendant contributing thereto." But we think it was sufficiently clear, if read in connection with the plaintiffs' B prayer.

We think there was error, however, in the granting of the defendant's 3d, 4th and 6th prayers, which sought to exclude a finding of negligence in any respect other than the failure to post a flagman in violation of the rules of the Company or an established custom. These prayers eliminated any consideration by the jury of the evidence that the engineer knew that the switching operation could not be completed until the northbound train had passed, that he saw the train coming, and actually warned a pedestrian of the danger, but nevertheless moved his train and cleared the crossing. There was also testimony that a flagman was there, but left the crossing and mounted the backing train. It is well established that a prayer is defective if it undertakes to segregate the evidence bearing upon a particular issue. We recognized this principle in the former appeal in this case, but held that the evidence of negli-

gence as to the northbound train presented a separate issue. See also *Friedman v. Hendler Creamery Co.*, 158 Md. 131, 140, 148 A. 426. Compare *Parr v. Peters,* 159 Md. 106, 111, 150 A. 34. The jury was entitled to consider all of the evidence relating to the switching operation, which created special dangers because the mere presence of the southbound train nullified the effectiveness of the flashing signals. Neither the rules nor the custom established a positive legal duty, but they were relevant as bearing upon the standard of care under the special circumstances. Compare *Baltimore & O. R. Co. v. State*, 81 Md. 371, 385, 32 A. 201. The permissible inference of negligence arises from the failure of the defendant's trainmen to anticipate and take reasonable precautions against the probability that the operators of the stopped cars would construe, or misconstrue, the opening of the crossing as an invitation to cross, not from the violation of rules or custom in the abstract. We think the prayers were also technically defective in omitting the words "or contributed to", after the word "caused". *State v. Lupton,* 163 Md. 180, 193, 161 A. 393. We think the defendant's 5th prayer was also defective in that it instructed the jury that a failure on the part of any passenger to warn the driver would bar his recovery, without requiring a further finding of an opportunity to warn, and that the failure contributed to the happening of the accident.

The appellee argues that the plaintiffs were not harmed by the granting of these prayers, because counsel for the plaintiffs did, in fact, argue to the jury that the clearing of the crossing was negligence, and because the jury visited the scene. of the accident and brought in verdicts within a few minutes after they retired. We are unable to see the force of the latter argument, unless it is to suggest that the jury did not read the twenty-one prayers granted and paid no attention to them.

This case is a striking illustration of the weakness inherent in the system of written prayers. The court did not charge the jury or read the granted prayers. Some of them seem to have been· read to the jury by counsel, and the prayers were given to the jury when they retired. But it seems proper to observe that in all probability the verdict was arrived at without guidance by the court. A simple oral charge, stating the applicable legal principles and issues, with or without a summary of the evidence, would undoubtedly have been of assistance to the jury, and would have obviated many of the technical points as to form urged by both sides in this appeal.

3. Since the cases must be remanded for a new trial, we must consider the rulings upon evidence, although there is force in the appellee's contention that there was no proper objection or motion to strike. The plaintiffs offered in evidence certain rules of the railroad company, which were quoted in our former opinion. We there said, 188 Md. 646, 652, 53 A. 2d 562, 565: "The defendant concedes the adoption of these rules and their admissibility in general. *State v. Baltimore & O. R. Co.*, 157 Md. 256, 145 A. 611. It contends, however, that they were inapplicable to the situation presented in the instant case, and hence not relevant. * * * the rules taken together seem clearly designed to afford protection, in the shape of a flagman, against the danger from other trains or engines as well as from switching movements. They recognize the need for a warning in substitution for the blinkers, which would be meaningless or inadequate in such a situation, as a warning of the approach of a second train."

The appellee now contends that it made no such concession, and that the rules were inadmissible. It attempts to distinguish *State v. B. & O. R. Co.*, *supra*, on the ground that an employee was there involved. We think the distinction is untenable. The general rule, supported by the best considered cases, is stated by Wigmore (2 *Wigmore, Evidence*, 3d Ed., § 282): "the

regulations adopted by an employer for conduct of a transportation system may be some evidence of his belief as to the standard of care required and thus of the negligent nature of an act violating those rules."

In *Canham v. R. I. Co.*, 35 R. I. 177, 188, 88 A. 1050, 1055, it was said: "The question of the admission in evidence of rules of the defendant carrier governing the operation of its trains or cars and issued to its employees, when such rules have been offered by the plaintiff, has been passed upon in many jurisdictions and almost without exception, the courts have held such to be proper evidence, although not conclusive of negligence. * * * The prevailing grounds, however, upon which such evidence is admitted is that these rules to employees indicate the necessity of care under the particular circumstances covered by the rules and are in the nature of an admission by the railroad that due care under the circumstances required the course of conduct prescribed by the rule. * * * Such evidence has been generally held admissible in cases of injuries to third persons, as well as to passengers." See also *Stevens v. Boston Elevated*, 184 Mass. 476, 69 N. E. 338; *Hurley v. Conn. Co.*, 118 Conn. 276, 172 A. 86; and *Palmer v. Long Beach*, Cal. App., 189 P. 2d 62, 66.

After the rules in question had been admitted, the appellee produced two officials of the company who testified, in effect, that the rules had been drawn on the assumption that the flashing signals themselves were a sufficient warning to the general public not to cross the tracks during a switching operation, and that the purpose and intent of the rules was to provide a flagman, not to warn travellers against other trains, but to give a signal when it was safe to cross, so that the delay might be as short as possible. The appellants contend that this testimony was improperly admitted, because it purported to interpret or vary the plain meaning of a written document.

We think the parol evidence rule has no application to this case. The fact that the rules were written is not

significant. The rules are admissible upon the theory that they constitute admissions as to the standard of care, and we perceive no reason why an explanation of denial that the rules are applicable, as they appear to be upon their face, may not be offered for the consideration of the jury. That seems to be the view expressed or assumed in the only cases we have found upon the point. *Kirkdoffer v. St. Louis Ry.*, 327 Mo. 166, 37 S. W. 2d 569; *Dundom v. N. Y. Central R. Co.*, 2 Cir., 145 F. 2d 711 and case cited, *Chicago & Alton R. v. Gretzner*, 46 Ill. 74, 86.

*Judgments reversed and cases remanded for new trial, with costs.*