## BROOKS *v.* SUN CAB COMPANY, INC.
[No. 19, October Term, 1955.]

238

*Decided November 8, 1955.*

*Motion for rehearing, filed December 8, 1955, denied January 3, 1956*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Bernard W. Rubenstein,* with whom was *Irvin A.
Adler* on the brief, for appellant.

*Frederick J. Green, Jr.,* with whom was *James J. Lind-
say* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Mrs. Marion Major Brooks, age 33, a resident of Bal-
timore, brought this suit for damages in the Baltimore
City Court against Sun Cab Company, Inc., to recover
for personal injuries which she sustained in a taxicab
owned by defendant and operated by William Dietz, de-
fendant's employee, when the taxicab hit a dip in the
street at the intersection of Lafayette Avenue and Poplar
Grove Street.

The accident occurred on July 25, 1953, at about 3:30
a. m. Plaintiff testified that she got into the rear seat
of the taxicab at the corner of Linden Avenue and Mc-
Mechen Street, and asked the driver to take her to her
home on Franklintown Road. She said that the driver
traveled west on Lafayette Avenue at a normal rate of
speed until he approached the intersection of Poplar
Grove Street, when he suddenly increased his speed, evi-
dently to make the green light; and when he hit the
dip in the street at that intersection she was bounced
up from the seat, and her head struck the ceiling of the
cab, and her back was strained. She declared that she
grabbed her head and screamed, and shouted that her
head was hurt. She further swore that the driver was
operating the car at such a great rate of speed that he

almost lost control of the car, but when he regained control he brought it to a stop, and she told him that she wanted to go to a hospital, as she was pregnant. The driver thereupon drove her to the University Hospital. There she had an examination, but returned to her home soon afterwards.

Plaintiff further testified that from the time of the accident on July 25 until the time of the birth of her baby on October 14, she had to spend most of the time in bed suffering with pains in her back and with headaches. She stated that, while her baby was born a normal child, she has continued to suffer pains in the lower part of her back. She further testified: "If I work I suffer these severe pains and if I get a little too tired, and also these headaches. * * * If they were due to the pregnancy, they probably would have been gone after delivery; but I still have them."

The driver testified that he was driving at a speed of 25 miles per hour, and when he reached Poplar Grove Street the traffic light was green and nothing unusual happened. He stated that his headlights were on, but he did not see the dip. He explained that, while Poplar Grove Street is about on the same level with Lafayette Avenue, its curb is deeper than that of Lafayette Avenue, and the dip takes care of the difference in depth. When asked how deep the dip was, he said: "No more than 4 to 6 inches deep, if it is that much; say about 2 to 4 inches." He admitted that he may have driven over this dip "hundreds of times," but he did not recall being "too familiar with it," as he had never had any complaint about the way he drove over it. He added that there are many other dips like it in Baltimore, and he did not think a driver can see them. He claimed that he went about a half block beyond the intersection before his passenger complained of being hurt, and he then stopped the car and asked her what the trouble was, and she said that she had bumped her head.

Defendant requested a directed verdict on the ground that there was no evidence legally sufficient to entitle plaintiff to recover. But the trial judge instructed the jury on both primary negligence and contributory negligence. On the subject of primary negligence, he instructed the jury that a taxicab company must exercise the highest degree of care consistent with its undertaking as a carrier. On the subject of contributory negligence his instruction was as follows:

> "On the other hand, if you do find that the defendant has violated its obligation, then your verdict will be in favor of the plaintiff, unless you find from the evidence that there was some negligence on the part of the plaintiff which directly contributed to the injuries she sustained, if you find that she sustained injury. When I say negligence on the part of the plaintiff, that means if you find that there was any failure on the part of the plaintiff to use ordinary care, that is to say, such care as an ordinarily prudent person would have used under the same circumstances riding in the cab in the back seat."

Plaintiff excepted to that instruction. The verdict of the jury was in favor of defendant, and judgment was entered on that verdict. Plaintiff appealed from the judgment.

In Maryland taxicabs used in the public transportation of passengers are classified as common carriers. Code, 1951, art. 78, sec. 20; *Goldsworthy v. Public Service Commission,* 141 Md. 674, 119 A. 693; *Stewart Taxi-Service Co. v. Spencer,* 149 Md. 635, 642, 132 A. 153. This rule is in accord with the great weight of authority under the trend of modern decisions. *Carlton v. Boudar,* 118 Va. 521, 88 S. E. 174, 4 A. L. R. 1480; *Anderson v. Yellow Cab Co.,* 179 Wis. 300, 191 N. W. 748, 31 A. L. R. 1197.

It is an established rule in Maryland, laid down by Judge Alvey in *Baltimore & Ohio R. Co. v. State, to Use*

*of Hauer,* 60 Md. 449, 462, that while common carriers of passengers are not insurers of absolute safety, yet they are bound to exercise reasonable care according to the nature of their contract; and as their employment involves the safety of the lives and limbs of their passengers, the law requires the highest degree of care which is consistent with the nature of their undertaking.

As a common carrier by taxicab has the duty to be watchful and alert at all times, a passenger has the right to assume that the carrier is familiar with the dangers to be apprehended, and will use proper care, skill, and vigilance to avoid them. In *O'Connell v. Quaker City Cab Co.,* 84 Pa. Super. Ct. 323, it was held that if the driver of a taxicab sees, or if reasonably alert should see, a hole in the street and should apprehend that danger to passengers is likely to result from driving into it, considering the speed at which he is driving, and could avoid the hole, and does not, it cannot be said as a matter of law that his conduct does not involve negligence; and therefore, if a passenger in a taxicab is injured as a result of the cab being driven into the hole, under these circumstances, it is proper to submit to the jury the question of the driver's negligence.

In view of plaintiff's testimony in the instant case that the driver was driving at such a rapid rate of speed that when the taxicab hit the dip at the intersection he lost control of the car, and she was given such a jolt from the rear seat that her head bumped the ceiling of the car, the evidence was legally sufficient to warrant submission to the jury of the question whether the driver was negligent. Whether there was want of care was from its very nature a question of fact and therefore to be decided by the jury.

We come then to the question of contributory negligence. Defendant makes no point that plaintiff's exception to the judge's charge did not comply with General Rules of Practice and Procedure, Part 3, subd. 3, Rule 6 (c), but contends that there was evidence of con-

tributory negligence or that the judge's instruction was not prejudicial. Of course, where there is no direct evidence of contributory negligence, nor any evidence from which contributory negligence may be legally inferred, it is prejudicial and reversible error to instruct the jury that the plaintiff cannot recover if they find that he was guilty of contributory negligence. *Anne Arundel County Comr's v. Carr*, 111 Md. 141, 151, 152, 73 A. 668; *Sieland v. Gallo*, 194 Md. 282, 71 A. 2d 45. Therefore, the decisive question is whether there was any evidence sufficient to warrant the judge in instructing the jury that their verdict must be for defendant if they found that there was any evidence of negligence on the part of plaintiff which contributed to her injuries.

It is generally accepted that a passenger riding in a taxicab is not held to the same degree of caution and vigilance as the driver of the taxicab. The passenger cannot be expected to be constantly on the lookout for possible dangers. Only in very exceptional instances is a passenger in a taxicab under a duty to be on the lookout for dangers that may be encountered so as not to be charged with contributory negligence in case he is injured. Ordinarily a passenger in a taxicab is not required to give warnings or make suggestions to the taxicab driver. If the passenger knows that danger may result from the operation of the taxicab in the course or manner in which it is being operated, and such danger is unknown to the driver or not apprehended by him, and the passenger is aware that the driver is doing nothing to avoid it, then the passenger is contributorily negligent if he has reason to believe that an accident may occur and yet fails to warn the driver. Generally, however, the failure of a passenger to protest against the manner in which the taxicab is being operated, or to give a warning of the likelihood of a collision, does not relieve the driver from liability for injury to the passenger occasioned by the driver's negligence. In the opinion of this Court in *Dashiell v. Moore,* 177 Md. 657, 672, 11 A. 2d

640, Judge Offutt remarked that the nagging advice of nervous and timid people, popularly called "back seat drivers," possibly causes more accidents than it prevents. In any event, there is no duty on a passenger to constantly divert the driver's attention by warnings of danger which should be just as apparent to the driver as to the passenger, unless the driver's conduct indicates that he is incompetent, reckless, or inattentive.

In addition, the seat which the passenger occupies in the taxicab is important in determining whether he exercised reasonable care to detect and avoid danger. It is obvious that a passenger sitting in the rear seat would not ordinarily have as good an opportunity to discover any danger ahead as a passenger sitting in the front seat beside the driver. *Baltimore, C. & A. R. Co. v. Turner*, 152 Md. 216, 228, 136 A. 609; *State, to Use of Creasey v. Pennsylvania R. Co.*, 190 Md. 586, 593, 59 A. 2d 190.

It is true that it is the duty of a passenger, after he gets into a common carrier, to protect himself against its normal motions incident to public transportation. *Przyborowski v. Baltimore Transit Co.*, 191 Md. 63, 59 A. 2d 687. However, where in a suit for damages the plaintiff makes out a *prima facie* case of negligence on the part of the defendant, and shows that the injury complained of resulted therefrom, without any negligence on the part of the plaintiff directly contributing thereto, the burden is cast upon the defendant to show that the plaintiff was guilty of contributory negligence. *Lindenberg v. Needles*, 203 Md. 8, 14, 97 A. 2d 901.

In the case at bar defendant failed to show that plaintiff acted any differently from the way any person of ordinary care and prudence would have acted. The evidence indicates that she was quietly sitting alone in the rear seat of the cab. She testified that she had ridden on Lafayette Avenue prior to July 25, 1953, "but not very much," and that she did not know at that time that there was a dip in the street at the intersection of

Lafayette Avenue and Poplar Grove Street. Inasmuch as Dietz, defendant's driver, was as familiar with the intersection as plaintiff was, plaintiff had no duty to warn him to be careful at the intersection. Moreover, there was no evidence to show that plaintiff should have exercised any special care and caution in the taxicab when it reached Poplar Grove Street. As there was no evidence of contributory negligence, the judge's instruction on contributory negligence was prejudicial error.

For these reasons we must reverse the judgment entered in the Court below in favor of defendant, and remand the case for a new trial.

*Judgment reversed and case remanded, with costs.*